# CHARLESTON.

STATE *ex rel.* C. P. HAMRICK v. COUNTY COURT OF POCA-
HONTAS COUNTY *et al.*

Submitted October 14, 1922.     Decided October 31, 1922.

1.  CONSTITUTIONAL LAW—LICENSES—*Law Authorizing Municipality to License Operation of Pool Room Not Unconstitutional as Denying Equal Protection of Laws or Confirming Arbitrary Powers.*

    Section 35a of chapter 32 of the Code, as amended and re-enacted by chapter 109 Acts 1921, properly construed does

not confer upon county courts or municipalities the discretion to arbitrarily grant or refuse licenses to persons to carry on the several kinds of business therein authorized, so as to render said statute void for infringing any of the provisions of the Constitution of the United States or of this State. (p. 226).

2. LICENSES—MANDAMUS—*Discretionary Refusal of License for Pool Room by City Council Not Revised by Mandamus or Otherwise.*

If, upon the application to the town council of a town organized under chapter 47 of the Code, by a person desiring a license to keep a pool room within the limits of such town, the council upon inquiry and ascertainment of the facts determines that the applicant is not a proper person to conduct such business and has theretofore violated one or more of the provisions of said statute with reference to the conduct of his business, they may within the reasonable discretion conferred upon them by the said act refuse such license, and their judgment thereon will not be the subject of review by this court on mandamus or other process. (p. 227).

Application by the State, on the relation of C. P. Hamrick, against the County Court of Pocahontas County and others for mandamus to compel the issuance of a certificate or license to operate a pool room.

*Writ refused.*

W. B. & E. L. *Maxwell,* for relator.
L. M. *McClintic,* for respondents.

MILLER, JUDGE:

Mandamus is applied for by petitioner to require the town of Cass and the county court of Pocahontas County, in which said municipality is situated, and the public officers thereof, to issue him a certificate or license to operate a pool room in said town of Cass.

It is averred in his petition and in the alternative writ that petitioner owns a lot and building in said town, worth about $10,000.00, in which he has operated a pool room for some four years prior to July 1, 1922, and up to that time had had no trouble to procure a license from the proper municipal and county authorities; but that when he made

application for a license about the first of July 1922, the beginning of the license year, improperly influenced by the West Virginia Pulp and Paper Company, of which the mayor of said town and the president of said county court were or had been employees, both the said town and the said county court arbitrarily and without any good reason, peremptorily refused to award him such license, thereby to compel him against his will to dispose of his said property at a sacrifice, and to absent himself from said town and county, that the employees of said company might be compelled to spend their money with the said company at their several places of business and places of amusement in said town.

He further avers that he had therefore conducted his business properly, so that the members of the county court and the mayor and council of said town had no legal or other reason for refusing him a license to maintain and operate a pool room in said town; that realizing the powerful political influence of the said company in said town and county, he at all times specially guarded and cared for his business, and had at all times carefully and earnestly complied with the laws of the State and the ordinances of said town.

It is further averred that the said town and county officials had in denying petitioner such license arbitrarily and without any good reason therefor abused the discretion granted them by sections 35a and 35b of chapter 109 of the Acts of 1921, and moreover that said sections of the statute, in so far as they undertake to grant the discretion to grant or refuse licenses, are in contravention of the fourteenth amendment to the constitution of the United States, guaranteeing to every one within their bounds the equal protection of the laws; also of section 1 of article X, and of section 10 of article III of the constitution of this State.

It is also averred that petitioner is a proper person to be granted the license applied for, and was a fully qualified applicant therefor.

The town of Cass and the mayor and council thereof, and the county court of said county and the president and other commissioners thereof, made separate returns to said writ,

the latter adopting the return of the former, and making additional responses thereto.    They thereby denied all the material averments.    The mayor and council of said town deny that they acted arbitrarily in refusing said license, and deny that they were in any way influenced thereto by said Pulp and Paper company.    They specifically deny that petitioner has at all times complied with the laws of the State governing the business of pool rooms and conducted his business in conformity to the laws and ordinances of said town; but they allege that on the contrary he had violated said laws and ordinances, in the following and in other particulars; namely, that he had permitted boys under the age of eighteen years to loiter and to play pool in his said pool room; that in one instance he was indicted in the circuit court for violating this provision of the law, but as respondents were informed, had succeeded in preventing conviction by hiring or enticing away the State's witnesses; that petitioner had not only brought in himself, but had permitted others to bring into the pool room conducted by him, intoxicating liquors and permitted the same to be drunk therein; that he had also permitted gambling in said pool room, and in one instance had been fined for permitting such gambling; that he had refused to comply with the ordinances of said town of Cass, and had encouraged people to come into his pool room and play what is known as "baseball pool", contrary to the ordinances of said town, for which he had been convicted, and which case was presently pending in this court on writ of error prosecuted by him; and for this and other reasons, and not without reason, nor actuated by any outside influences and for the best interests of the town and community, they had in the reasonable discretion conferred upon them by the statute refused petitioner's application for a license; that in October prior to the rejection thereof they had called petitioner's attention to his violation of the law in the particulars referred to, and had read to him the statute relating to the subject, and warned him that if he did not abstain from such violations of the law his license would be revoked or he would be denied a license in the future.

Section 34, chapter 32, Code 1918, gave the county or license court who authorized any licenses authority, for good cause shown, to revoke the same upon the petition in writing of any inhabitant of the county or town; but provided that the licensee should first have reasonable notice thereof and the privilege of being heard in person or by counsel. As amended by chapter 102 Acts 1919, this statute limits the authority of revocation to the county court; but section 35 of said chapter 32, as amended by chapter 109 Acts 1921, gives cities and towns exclusive power to grant licenses, to be exercised therein, and further provides that they shall have all the rights and powers thus granted to county courts, which would necessarily include the power to revoke as well as to grant licenses. We are not here dealing with the right of revocation, but with the power of the respondents to withhold licenses to operate pool tables. The return of the county court, in addition to what is answered by the mayor and council of said town, is that their refusal to grant a license to petitioner was based on the fact that under the provisions of chapter 109 of the Acts of 1921, they were without authority or jurisdiction in the premises, without the favorable action of the council of said town, inasmuch as the applicant desired to conduct his business within the corporate limits of said municipality.

Section 35a of said chapter controlling the issuing of such license provides: "Every person desiring a license for the purpose of keeping, for public use or resort, a bowling alley, pool table, billiard table, bagatelle table or any table of like kind, shall apply in writing to the county court, and such writing shall state the house and fully describe the place for which such license is desired, and the court may *at its discretion grant or refuse such application.*" (Italics ours).

Section 35b provides that where the place in which such business is to be conducted is situated in an incorporated city or town, the council or other governing body thereof shall have exclusive power and right to grant such license and all the other powers therein granted to the county court. The town of Cass is a municipality created under chapter 47 of

the Code, and its powers generally are limited thereby; but the provisions of said chapter 109 of the Acts of 1921 clearly apply to all municipalities. For some reason the legislature chose to confer on the county courts and the councils of municipalities discretion to grant or refuse licenses for the purposes mentioned in said section. We decided recently that city councils proceeding under special charters and ordinances enacted pursuant thereto could not exercise this power arbitrarily by granting to some and withholding from others licenses to carry on a lawful business, and that as a condition precedent they must by ordinance prescribe general rules applicable to all. *Houvouras* v. *City of Huntington*, 90 W. Va. 245; *State ex rel. Haddad* v. *City of Charleston*, 92 W. Va. ...., decided at the present term. The reason for denying such arbitrary authority is that its exercise, whether by statute or by ordinance, would render either unconstitutional and void. *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Hagerstown* v. *B. & O. R. R. Co.*, 107 Md. 178.

The question now presented is: Do these authorities condemn the statute which purports to give respondents the discretion to grant or refuse licenses to keep for public use or resort a pool table? If we can, it is our duty to give such construction to the statute as will uphold it against attack upon constitutional grounds. While by its language arbitrary power might possibly be inferred, we think it must not be given such construction as would render it void on constitutional grounds.

The charges of specific violations of the law by petitioner, supported by affidavits, are not specifically denied by him. He contends himself for the most part by affirming his fitness to have the license applied for and by asserting his constitutional right thereto. He tendered and filed in support of his character, and in rebuttal of the specific charges of violations of the law by him, the unsworn statement of quite a number of persons, alleged customers of his, to the effect that he had always conducted his business in a clean, fair and business like manner. But such statement is too general, and not being sworn to, can not be regarded as evidence. The

return of respondents also alleges that petitioner has been convicted of a number of violations of the law in connection with his business. These are not denied. If not true, they could have been disproved by the record or otherwise.

Section 19 of chapter 32 of the Code, now repealed, required the county court or other licensing tribunal, as a condition precedent to granting any license authorized in the first section, which included pool tables, to be satisfied and to so enter upon its record or minutes, that the applicant was not of intemperate habits and had not been convicted of a felony, etc. Certainly if respondents did so act in determining in advance that the petitioner was not a fit person to have such license and had violated the law in any of the particulars inhibited by the statute, it can not be said that they acted arbitrarily, but with the discretion which was intended to be conferred by the statute. The exercise of such discretion does not necessarily involve the conformance of the applicant to certain definite standards which can be made known in advance, but requires the exercise of personal judgment and the discretion of the licensing officers, and which honestly made can not be made subject to review by the courts, by writ of mandamus or otherwise. All that is required in such case is that the discretionary decision shall be the outcome of examination and consideration. 19 R. C. L. 967, paragraph 265.

If therefore, the statute does not, as we now hold, authorize the exercise by respondents of arbitrary discretion in the granting or refusing of licenses, and they have not so acted with respect to the application of petitioner, as we now find, the statute is not invalid nor has the relator been deprived of any constitutional rights justifying the relief by mandamus which he now seeks at our hands.

*Writ refused.*