**EDGERTON v. KINGSLAND, Commissioner
of Patents.**

No. 9361.

United States Court of Appeals
District of Columbia.

Argued March 6, 1947.

Decided Dec. 4, 1947.

Writ of Certiorari Denied April 19, 1948.

See 68 S.Ct. 903.

Mr. David Rines and Mrs. Joan Rines Needleman, both of Boston, Mass., of the bar of the Commonwealth of Massachusetts, pro hac vice, by special leave of court, with whom Mr. Frank W. Dahn, of Washington, D. C., who entered an appearance, was on the brief, for appellant.

Mr. E. L. Reynolds, United States Patent Office, of Washington, D. C., with whom Mr W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., who entered an appearance, was on the brief, for appellee.

Before STEPHENS, EDGERTON and WILBUR K. MILLER, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the District Court of the United States for the District of Columbia dismissing the complaint in Civil Action No. 29,178 under Rev.Stat. § 4915 (1875), 35 U.S.C.A. § 63, in which the appellant sought judicial authorization of the allowance of a patent containing claims 74 and 76 to 81 inclusive and 222 of his application Serial No. 685,501 for a patent on an electric system for stroboscopic apparatus. The complaint sought also a determination that the appellant is entitled to make certain amendments to the specification and drawings of his application.

The system disclosed by the application is one in which repeated flashes of light for viewing moving objects are produced between two main electrodes of a mercury vapor tube. Current for the flashes is supplied by a battery and condenser. The flash occurs as the result of the passing of a current through an auxiliary electrode of

the mercury vapor tube, this current so operating as to cause a spark to jump between the tube's two main electrodes. The current to the auxiliary electrode is supplied by the secondary coil of a transformer in such manner that the energization of the primary coil thereof will control the flash. The primary coil is supplied with current from a battery and condenser through a circuit which includes a so-called thyratron. This device releases and interrupts the flow of the current to the primary coil at intervals determinable in a variety of ways not material to this case.

We shall deal separately with claims 74 and 76 to 81 inclusive, claim 222, and the request for a determination that the ap-pellant is entitled to make certain amendments.

*Claims 74 and 76 to 81 inclusive:* These claims are printed in the margin.[1] They are for convenience sometimes hereafter referred to as the static inverter claims. The record shows that the proceedings in the Patent Office pertinent to their disposition are as follows: The application for patent Serial No. 685,501 was filed August 16, 1933. The static inverter claims, not originally included in the application, were added by amendment. On June 11, 1937, the Patent Office declared Interference 74,-402, Edgerton v. Miller, between the appellant's application and two Miller patents. On November 23, 1938, the Primary Exam-

---

[1] "74. In combination with apparatus for producing electrical energy flashes of the type in which a condenser is periodically discharged through a gaseous conductor lamp, means for initiating discharge of the condenser at selected intervals consisting of a static inverter for producing electrical impulses at a controlled rate, said inverter comprising a gaseous discharge device connected in circuit with a source of potential and with means for varying the impulse rate comprising a variable impedance, and means for conveying such impulses to the flash producing apparatus.

"76. Apparatus of the type defined in claim 74 in which the gaseous discharge device is a gaseous conductor device having at least three electrodes of a type in which the maximum potential which can be established between two main electrodes without appreciable current flow therebetween may be controlled by controlling the potential between one of said main electrodes and a third electrode.

"77. Apparatus of the type defined in claim 74 in which the static inverter includes a second condenser arranged in series circuit with the gaseous discharge device and the source of potential.

"78. Apparatus of the type defined in claim 74 in which the static inverter includes a second condenser shunted across the gaseous discharge device.

"79. In combination with apparatus for producing electrical energy flashes of the type in which a condenser is periodically discharged through a gaseous conductor lamp, means for initiating discharge of the condenser at selected intervals consisting of a static inverter for producing electrical impulses at a controlled rate, said inverter comprising a gaseous discharge device in series cir-cuit with a source of potential and with a second condenser, and means for varying the impulse rate comprising a variable impedance shunted across said second condenser, and means for conveying such impulses to the flash producing apparatus.

"80. In combination with apparatus for producing electrical energy flashes of the type in which a condenser is periodically discharged through a gaseous conductor lamp, means for initiating discharge of the condenser at selected intervals consisting of a static inverter for producing electrical impulses at a controlled rate, said inverter comprising a gaseous discharge device connected in circuit with a source of potential, a second condenser shunted across the gaseous discharge device, and means for varying the impulse rate comprising a variable impedance connected in the charging circuit of the second condenser, and means for conveying such impulses to the flash producing apparatus.

"81. In combination with apparatus for producing electrical energy flashes of the type in which a condenser is periodically discharged through a gaseous conductor lamp, means for initiating discharge of the condenser at selected intervals consisting of a static inverter for producing electrical impulses at a controlled rate, said inverter comprising a gaseous discharge device connecting in circuit with a source of potential, a second condenser shunted across the gaseous discharge device, and means for varying the impulse rate comprising a vacuum tube connected in the charging circuit of the second condenser together with means for controlling the current flowing through said vacuum tube, said means comprising a variable impedance."

iner granted a motion by Miller to dissolve upon the ground that the appellant's application did not disclose a static inverter such as was described in the claims. The Board of Appeals on July 18, 1939, affirmed this ruling. On March 26, 1940, the Primary Examiner rejected the claims upon the same grounds as those upon which he had dissolved the interference. On December 23, 1940, he repeated this ruling and made it final. On August 1, 1941, the Board of Appeals affirmed this rejection. Thereafter within the time allowed by the rules of the Patent Office, the appellant filed a petition for rehearing. On September 16, 1941, this was denied by the Board of Appeals. No appeal under Rev. Stat. § 4911 (1875), 35 U.S.C.A. § 59a, was taken to the Court of Customs and Patent Appeals. The complaint under Rev. Stat. § 4915 was not filed in the District Court within six months after September 16, 1941.

At the time of the rejection of the static inverter claims other claims in the appellant's application had not yet been disposed of. Part of them were involved in an interference (78,041, Edgerton v. Smede) and final action as to the issue of a patent under the appellant's application did not occur until after the termination of that interference. On January 25, 1944, upon a further request for reconsideration, the Primary Examiner again rejected the static inverter claims, on this occasion upon the ground that their rejection in 1941, as above described, was final and had become *res judicata* in the Patent Office. On January 1, 1945, the Board of Appeals in making final disposition of the appellant's application as a whole affirmed the Primary Examiner's ruling of January 25, 1944. There were subsequent proceedings in the Patent Office in respect of the static inverter claims but they are not pertinent to the disposition of this case. For complete-

ness, however, they are set forth in the margin.[2] The finally pertinent date is June 1, 1945, at which time the complaint involved in this appeal was filed.

Upon the foregoing record the District Court found that: "Claims 74 and 76 to 81 of the application here involved were finally rejected by the primary examiner on the ground that they are not supported by the disclosure of the application and this rejection was affirmed by the Board of Appeals in 1941. The plaintiff did not appeal from this rejection to the United States Court of Customs and Patent Appeals and did not file an action under R.S. 4915 within the time allowed by law for such action after the decision by the Board." The court concluded that therefore "the plaintiff's [appellant's] right to the subject matter of these claims has become *res judicata* against him." The court found also that the appellant's application "does not contain a disclosure which will support any of claims 74, 76 to 81, inclusive . . . ." The court finally concluded that the appellant is not entitled to any of those claims and it accordingly dismissed the complaint as to them.

■ It is necessary to discuss only the ruling that the appellant's right to the subject matter of claims 74 and 76 to 81 inclusive has become *res judicata* against him. We think that the action of the trial court in dismissing the complaint as to claims 74 and 76 to 81 inclusive on that ground was correct.

The appellant's failure within six months after the decision of the Board of Appeals in 1941 either to appeal to the Court of Customs and Patent Appeals under Rev. Stat. § 4911 or to file a complaint in the District Court under Rev.Stat. § 4915 is fatal. Rev.Stat. § 4915 provides:

Whenever a patent on application is refused by the Board of Appeals or whenever

---

[2] On January 9, 1945, the appellant filed a petition for rehearing of the Board's decision of January 1. On February 15, 1945, the Board rendered a further decision reversing its action of January 1 in part, but not as to claims 74, 76–81. On or about March 1, 1945, the appellant renewed his petition for rehearing, requesting reconsideration of the decision affirming the Primary Examiner's rejec-

tion of claims 74, 76–81. On or about the same date the appellant filed a petition to invoke, to the same end, the supervisory authority of the Commissioner of Patents. On or about March 20, 1945, the Board of Appeals rendered a further decision declining to modify its decision of February 15. The Commissioner declined to intervene.

any applicant is dissatisfied with the decision of the board of interference examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision . . .. Upon the expiration of the six montns' period provided for in the statute the decision of the Board of Appeals against the appellant became *res judicata* in the Patent Office. Lavin v. Pierotti, 1942, 129 F.2d 883, 29 C.C.P.A. (Patents) 1235; In re Ellis, 1936, 86 F.2d 412, 24 C.C.P.A. (Patents) 759; In re Becker, 1935, 74 F.2d 306, 22 C.C.P.A. (Patents) 843. Also it became *res judicata,* in the sense of being beyond attack, in the courts. In re Barratt's Appeal, 1899, 14 App.D.C. 255; In re Edison, 1908, 30 App.D.C. 321; cf. Overland Co. v. Packard Co., 1927, 274 U.S. 417, 47 S.Ct. 672, 71 L.Ed. 1131.

The appellant contends that if recourse to the courts had been taken within six months after the decision of the Board of Appeals in 1941 it would have been premature since the Board's rejection of claims 74 and 76 to 81 inclusive at that time did not then dispose of the entire application. But this contention is answered adversely to the appellant by Hoover Co. v. Coe, 1945, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488. In that case the petitioner's assignor filed an application for a reissue of a patent. A number of claims included in the application were copied, or substantially copied, from several later patents in order to provoke interferences therewith and a contest as to priority of invention. The Primary Examiner finally rejected four of the claims as not reading on applicant's disclosure. The Board of Appeals of the Patent Office affirmed. The petitioner then brought suit against the Commissioner under Rev.Stat. § 4915 in the District Court of the United States for the District of Columbia to compel allowance of the four claims to the end that interference proceedings might be instituted. After a hearing on the Patent Office record and additional evidence, the court dismissed the complaint upon the ground that the claims did not read on the disclosure of the appli-

cation. Appeal was taken to this court and in disposing of the appeal this court on its own motion raised the question whether Rev.Stat. § 4915 conferred jurisdiction on the District Court to enter a decree which does not determine the right of the applicant to receive a patent but which instead directs the examiner to allow claims for the purpose of provoking subsequent interference proceedings. The court held that the District Court lacked jurisdiction. Its view was that a court of equity ought not afford piecemeal relief pending completion of the administrative process and therefore ought not entertain a suit under Rev.Stat. § 4915 unless its adjudication would conclude all possible questions as to the right to a patent. The Supreme Court reversed the ruling. It reasoned that:

> On its face the statute confers the right to sue "Whenever a patent on application is refused by the Board of Appeals." The patent applied for *(that is, the claims in question)* was finally refused by the Board of Appeals. No appeal was taken to the United States Court of Customs and Patent Appeals, and petitioner filed its bill within the time limited in the section. [Italics supplied] [325 U.S. at page 82, 65 S.Ct. at page 956]

It reasoned further that if the applicant can proceed by a bill under Rev.Stat. § 4915 only when every step requisite to issue has been taken, "the language of R.S. 4915 is ill chosen." The Court said: " 'Whenever a patent on application is refused' states precisely this case. The petitioner's application was refused." (325 U.S. at page 84, 65 S.Ct. at page 957) The Court reviewed the legislative history of Rev.Stat. § 4915 and also judicial construction and application thereof. It pointed out that the lower Federal courts had consistently construed the statute as conferring jurisdiction in cases indistinguishable from the one under review; that:

> . . . They have so held in cases where it affirmatively appeared that further proceedings in the Patent Office would be necessary following adjudication in favor of the applicant, and where though it did not appear of record that further proceedings would be required in the Patent Office, it was evident that they might ensue adjudication, as where a patent was denied for want of invention. And, where an applicant has succeeded in a bill filed under R.S. 4915, the

courts have not questioned the power of the Patent Office subsequently to disallow the claims for want of invention over a newly discovered reference to the prior art. [325 U.S. at page 89, 65 S.Ct. at page 960]

The court concluded:

The ruling of the Board of Appeals in the instant case was neither a procedural ruling nor an interlocutory one as to which the District Court should not entertain a suit under R.S. 4915. On the contrary, it finally denied a patent *on the claims presented*. In this respect it was like a dismissal of a suit in a court. Unless the applicant could sue to correct error in that dismissal, he could never sue under R.S. 4915. That he was accorded a right of suit in this case the language of the statute, its history, the administrative construction and judicial decision unite in affirming. [Italics supplied] [325 U.S. at page 90, 65 S.Ct. at page 960]

■ *Claim 222:* This claim, which is set out in full in the margin,[3] purports to describe an oscillatory condenser discharging circuit. It was copied from a patent to Slepian No. 2,327,971 in which it appeared as claim 63. It is to be understood in terms of Figure 1 of the application:

the anode electrode 6 and from the lower or negative terminal of the condenser 26 by way of lower conductor 8 to the cathode electrode 4. Whether tube 2 is a part of the circuit as described in the claim was a matter of dispute—the appellant contending that it is not.

Claim 222 was rejected by the Patent Office, the final ruling adverse to the claim being by the Board of Appeals February 15, 1945. The complaint in the instant case was filed June 1, 1945, and was therefore timely in respect of claim 222, although not timely, as pointed out above, in respect of claims 74 and 76 to 81 inclusive.

The issue before the District Court was whether or not the appellant's application contained a disclosure which would support claim 222 (specifically, whether or not the application disclosed an oscillatory condenser discharging circuit). The court found that it did not and concluded that the appellant was therefore not entitled to make the claim and accordingly dismissed the complaint with respect to this claim. The question on appeal is whether or not it can with reason be said that the finding

Fig. 1.

According to the appellant's description thereof in his brief, the oscillatory condenser discharging circuit extends from the upper or positive terminal of the condenser 26 by way of the upper conductor 10 to

of the trial court was in clear error. Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F. 2d 449; Sharp v. Coe, 1941, 75 U.S.App. D.C. 118, 125 F.2d 185; Dyer v. Coe, 1941, 75 U.S.App.D.C. 125, 125 F.2d 192.

---

[3] "222. In combination, a luminescent-discharge device having a control electrode and a plurality of principal electrodes and having rectifier characteristics, an oscillatory circuit including said principal electrodes, means for causing a surge of current to flow through said principal electrodes, and means including a grid-controlled discharge rectifier tube for producing an initiating surge of current between said control electrode and one of said principal electrodes."

■ At the trial the Patent Office record was as usual introduced by the Commissioner. Expert witnesses testified in behalf of the appellant. The Patent Office record showed the following: Claim 222 was made a part of the appellant's application by amendment on January 7, 1944. On January 25, 1944, the Primary Examiner rejected the claim upon the ground, among others, of misdescriptiveness. He stated: "Claim 222 is further rejected as not supported by applicant's original disclosure, in that 'an oscillatory circuit including said principal electrodes' was not originally disclosed." On February 26, 1944, after the appellant had requested reconsideration, the Primary Examiner made his rejection of claim 222 final. He said in part:

The rejection of claim 222 is not supported by applicant's original disclosure, is repeated. The reference to the bottom of page 8 of the original specification is noted. The original matter found there reads . . .

"The condenser discharge through the mercury vapor lamp 2 would be oscillatory except for the fact that the tube 2 is a rectifier and allows current to flow only from the anode 6 to the cathode 4. This oscillatory tendency is useful, however, since it assists in preventing a continuous flow of current through the lamp 2 from the direct-current power supply such as the battery 102."

The above quoted matter is a clear admission that any tendency to oscillate is prevented because of the rectifying characteristics of tube 2. Such matter does not support the claimed "oscillatory circuit including said principal electrodes".

In opinions of January 1, 1945, and February 15, 1945, the Board of Appeals affirmed the action of the Primary Examiner. There was no dispute either in the Patent Office record or in the evidence supplied through the testimony of the witnesses for the appellant that the current in the appellant's apparatus does not oscillate through tube 2, this because of the rectifying characteristics of that tube as a result of which the current is allowed to flow in one direction only. The principal question therefore was whether or not tube 2 is a part of the circuit. The rulings in the Patent Office treated it as such. One of the witnesses for the appellant testified that the tube is not part of the circuit. But the appellant himself, comparing claim 222 with a claim in another patent (Slepian, No. 2,327,971), testified, contrary to his contention on appeal, that it is.[4] The testimony of the witnesses was in agreement that there is an oscillatory tendency in the *voltage*. But the claim does not limit its language to this. It reads "an oscillatory circuit including said principal electrodes." The claim as written could refer to both current and voltage. Since it is a copied claim the burden is on the appellant to show a clear basis for it in his disclosure and doubts as to his right to make it are to be resolved against him. Lindley v. Shepherd, 1928, 58 App.D.C. 31, 24 F.2d 606.

■ The appellant urges that the Patent Office has made rulings in other cases inconsistent with its present holding as to claim 222. But it is elementary that the allowance of claims in one case is not controlling in the consideration of the patentability of claims in another. In re Greider, 1942, 129 F.2d 568, 29 C.C.P.A. (Patents) 1079. Or, as put by this court, "while the decision of the Patent Office on the . . . [other] application and the reasons underlying the decision may have persuasive value on the question of the patentability of . . . [the claims of the case under consideration], the decision is not controlling. Two wrongs cannot make a right. It was proper for the Commissioner to reject . . . [the latter claims], notwithstanding that identical claims had been patented . . . if upon mature consideration he concluded such claims to be not properly patentable . . .." Fessenden v. Coe, 1938, 69 App. D.C. 193, 199, 99 F.2d 426, 432.

■ In view of the two rulings in the Patent Office adverse to the appellant, and in view of the appellant's testimony alluded to above, it cannot be said that the District Court was in clear error in its finding

---

4 "Q. Is there any difference in the two cases? A. Well, the difference is in the circuits, but there is no difference in the fact that the rectifier tube is present in the circuit in both cases."

that claim 222 is not supported by the disclosure.

■ *Request for a determination that the appellant is entitled to make certain amendments:* Appellant's original application included nine exhibits. The proposed amendments consisted of three additional exhibits, Nos. 10, 11 and 12. These, according to the appellant's complaint, "do no more than to illustrate the static inverter." The amendments consisted also of certain additions to the specification which additions, it is alleged, "do no more than to make clearer matter that was originally disclosed in the . . . application." The amendments were submitted to the Patent Office, according to the complaint, on September 23, 1943, and January 7, 1944. The Commissioner, according to the allegations, in addition to refusing to grant letters patent including claims 74 and 76 to 81 inclusive (and 222), arbitrarily declined to permit the appellant to amend his specification and drawings in the manner requested. As stated at the outset of this opinion the complaint sought a judgment that the appellant is entitled "to amend his specification and drawings" as requested. The Commissioner's answer admits that the Patent Office declined to enter the three exhibits, asserts that it permitted the amendments to the specification to be entered, but admits that it then required them to be cancelled. The Commissioner asserts that the rejection of the amendments was "based on *res judicata*" and also on the ground that they constituted new matter. The Commissioner denies that his action was arbitrary.

At the close of the trial, the District Court filed an "Informal Memorandum" in which it stated (so far as is pertinent to the amendments now under discussion): "Plaintiff [appellant] is not entitled to amend his drawings or specification as requested nor is he entitled to a mandatory injunction requiring the Commissioner of Patents to permit the proposed amendments." No mention of the amendments is made in the findings of fact and conclusions of law. But the dismissal of the complaint is general, i. e., broad enough to dispose of the prayer in respect of the amendments.

The amendments related solely to claims 74 and 76 to 81 inclusive. As has been demonstrated in that part of this opinion which deals with those claims they were rejected by the Patent Office in 1941, and no appeal was taken to the Court of Customs and Patent Appeals, and no complaint filed in the District Court under Rev.Stat. § 4915 within the six months' period required. The rejection of the claims in the Patent Office therefore became, as we rule above, *res judicata* there and final against any action in the District Court. The amendments themselves, as appears from the dates mentioned above, were filed in the Patent Office after the expiration of this six months' period. For the District Court to have ruled that the appellant was entitled to entry of the amendments would have been for it to ignore its own ruling as to the finality of the Patent Office decision rejecting the very claims to which the amendments related. The Patent Office was not required to allow amendments to the specification and drawings relating to claims whose rejection had become *res judicata*. The District Court therefore correctly dismissed the complaint so far as the prayer relating to the amendments is concerned.

■ It would have aided this court in the disposition of this case if the District Court had made findings of fact and conclusions of law concerning the amendments. But since upon the face of the record, for the reasons above stated, the refusal of a judgment allowing the amendments was correct, the absence of findings and conclusions does not warrant a remand.

The judgment of the District Court is in all respects

Affirmed.