**Clark K. SLEETH, as Health Officer of Monongalia County, West Virginia, Appellant,**

v.

**DAIRY PRODUCTS COMPANY OF UNIONTOWN, Appellee.**

No. 7039.

United States Court of Appeals Fourth Circuit.

Argued Nov. 15, 1955.

Decided Dec. 27, 1955.

**166**

George R. Farmer, Morgantown, W. Va. (Cletus B. Hanley, Asst. Atty. Gen. of West Virginia, and Albert M. Morgan, Prosecuting Atty., Monongalia County, Morgantown, W. Va., on the brief), for appellant.

Glenn Hunter, Morgantown, W. Va. (Charles McCamic, Wheeling, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and R. DORSEY WATKINS, District Judge.

SOPER, Circuit Judge.

This suit was brought in the District Court by Dairy Products Company of Uniontown, a Pennsylvania corporation, against Roger A. Kennedy, Health Officer of Monongalia County, West Virginia,[1] to secure a judgment commanding the Health Officer to approve an application of the company for a permit to distribute milk in the county and forthwith to issue the permit. There was also a prayer for an injunction to restrain the Health Officer from prosecuting the company, criminally or otherwise, for selling milk in the county without a permit and from arresting its agents because of any such sale; but the suit was not pressed on the latter ground. Jurisdiction is based on the ground that the action was of a civil nature between citizens of different states wherein the controversy exceeds the sum of $3,000, and the purpose of the suit is to restrain the defendants from interfering with the company in carrying on its lawful business in Monongalia County in the course of interstate commerce.

The principal question at issue is whether the Dairy Products Company had conformed to milk regulations issued by the Public Health Council of the State of West Virginia on January 5, 1944, under the power conferred by Ch. 16, Art. 7, § 5 of the Code of West Virginia. It was alleged in the complaint that the Dairy Products Company had complied with the laws and regulations of the State of Pennsylvania regarding the distribution of milk and also with the milk regulations of the City of Pittsburgh which are more stringent than those of the State, and that these laws and regulations were equivalent to the regulations of the State of West Virginia; and that the Company had applied to the Health Officer of Monongalia County for a permit to sell milk in the county, but that he had arbitrarily and unreasonably refused to issue it. The suit was defended on the ground that the Pennsylvania and Pittsburgh regulations were not equivalent to the regulations of West Virginia and therefore the Dairy Products Company was not entitled to the permit. The District Judge found that there was equivalency and therefore held that the

---

1. Clark K. Sleeth, having succeeded to the office before the conclusion of the case, was substituted as party defendant.

refusal of the Health Officer of the county to grant a permit to the county was an unwarranted obstruction to interstate commerce in milk and milk products, and violated the plaintiff's constitutional rights.

The validity of Ch. 16, Art. 7, § 5 of the West Virginia Code, which directs the Public Health Council to adopt regulations to provide clean and safe milk and milk products to be enforced by local health authorities throughout the state, is not questioned. Nor is the validity of the regulations themselves challenged. In Dean Milk Co. v. City of Madison, Wis., 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329, the Supreme Court of the United States recognized the appropriateness of the local regulation of the sale of milk as within the powers of the states, even though interstate commerce may be affected, in the absence of federal legislation; and in State v. Bunner, 126 W.Va. 280, 27 S.E.2d 823, the Supreme Court of West Virginia held that the West Virginia statute did not involve an unconstitutional delegation of legislative authority and that the regulation forbidding the sale of milk without a permit from the county Health Officer was valid, although no statute expressly authorized the Council to make the permit a prerequisite of sale. The court also held that the regulation providing that only persons complying with the regulations should be entitled to a permit did not confer on the Health Officer arbitrary power or discretion to grant or refuse a permit; and the court added that if it should be that any regulation was unreasonable or invalid, the applicant should not be required to comply therewith; but the method of procedure in such case was to apply to a proper court to compel the issuance of the permit, rather than to operate in defiance of the regulations.

The regulations issued under the authority of the statute are sweeping in scope and elaborate in detail. Amongst other things, it is provided in § 5 that at least once during each grading period, in no case to exceed six months, the Health Officer shall inspect all dairy farms and all milk plants whose milk or milk products are intended for consumption within the State of West Virginia. Section 6 provides for the taking and examination by the Health Officer of at least four samples of the product from each dairy farm and milk plant during each grading period. Section 7 provides for the announcement every six months by the Health Officer of the grades of milk and milk products to be delivered by producers and distributors; and the standards for the grading of the milk, the conditions under which it is produced and handled, and the pasteurization of the product are meticulously prescribed. Section 11 of the regulations with which we are particularly concerned, provides that milk and milk products from points beyond the limits of routine inspection of the state may not be sold therein, unless produced and pasteurized under provisions equivalent to the requirements of the West Virginia regulations, provided that the Health Officer shall satisfy himself that the Health Officer having jurisdiction over the production and processing is properly enforcing such provisions. Penalties are provided by § 16 for violations of the regulations.

It is manifest that the duty imposed upon the county Health Officer of West Virginia by the statutory regulations involves the construction and application thereof, and the exercise of judgment and discretion in their enforcement. His duties are not so plainly marked as to amount to a positive command, and hence the well established rule applies that the courts will not issue a mandamus or other order to control the action of an executive or administrative officer in the discharge of statutory duties involving the exercise of judgment or discretion, unless the attempted performance of the duty amounts to an abuse of discretion.

Mandamus will lie where there is a clear legal right to the performance of a particular act or duty at the hands of the respondent, and such act or duty

is of a ministerial nature[2] rather than one involving the exercise of discretion.[3] It will lie to compel officers with discretionary duties to take action,[4] but it will not interfere with the exercise of their discretion unless their action is illegal,[5] or is an arbitrary or capricious abuse of such discretion.[6] This remedy is available only when all administrative remedies have been exhausted,[7] and when there is no other available remedy.[8]

The evidence in this case in our opinion does not disclose such an abuse of discretion as to warrant the intervention of the court. The proceedings in the District Court extended over a considerable period of time, during which careful investigations were made in order to ascertain whether the company's milk complied with the West Virginia requirements. The West Virginia regulations conform with the model milk ordinance and code recommended by the United States Public Health Service; and so the parties to the case agreed to designate Darold W. Taylor of the United States Public Health Service to inspect the farms supplying milk to the company and to examine its receiving and pasteurization plants and laboratory facilities and procedures, and to report his findings to the court to be received in evidence for all proper purposes. This inspection was made and the report was filed in January, 1953. When the case came to trial on November 6 of that year and the Taylor report was submitted, it was found that the West Virginia re-

quirements had not been met. Thereupon the plaintiff was permitted to file an amended complaint and Mr. Taylor was designated to make another inspection. His second report was filed May 11, 1954 but the permit was again withheld because the Health Officer of the county was still of the opinion that the enforcement methods of the State of Pennsylvania and of the Pittsburgh Health Department were not equivalent to those of the State of West Virginia.

The case came to hearing under these circumstances. It was shown that some of the objections previously urged by the Health Officer had been met, but that in certain respects the Pittsburgh regulations were not as strictly enforced as those of the State of West Virginia. Two circumstances only need to be referred to in this connection. Section 5 of the regulations, as we have seen, requires that the West Virginia Health Officer shall inspect all dairy farms and all milk plants whose products are intended for consumption within the state at least once during each six months. It will be perceived that this requirement involves an inspection of *all* of the farms and plants and that the inspection be made by the Health Officer of the state. These two requirements were not met by the Pennsylvania or Pittsburgh methods of enforcement. The evidence showed that only about 10% of the Pennsylvania farms and plants were inspected four times each year instead of all of the farms and plants every six months,

2. Kendall v. United States ex rel. Stokes, 12 Pet. 524, 9 L.Ed. 1181.

3. Decatur v. Paulding, 14 Pet. 497, 516. 10 L.Ed. 559; Keim v. United States, 177 U.S. 290, 292, 20 S.Ct. 574, 44 L.Ed. 774; State ex rel. Hamrick v. Pocahontas County Court, 92 W.Va. 222, 114 S.E. 519; Swearingen v. Bond, 96 W.Va. 193, 122 S.E. 539, 136 A.L.R. 1500; Peoples ex rel. Sheppard v. Illinois State Board of Dental Examiners, 110 Ill. 180.

4. Edgerton v. Kingsland, 83 U.S.App.D.C. 1, 168 F.2d 121; Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111.

5. Proctor & Gamble Co. v. Coe, 68 App. D.C. 246, 96 F.2d 518; State ex rel. Kelley v. City of Grafton, 87 W.Va. 191, 104 S.E. 487.

6. Bates & Guild Co. v. Payne, 194 U.S. 106, 108–109, 24 S.Ct. 595, 48 L.Ed. 894; State ex rel. Hoffman v. Town of Clendenin, 92 W.Va. 618, 115 S.E. 583, 29 A.L.R. 37; Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill. 227, 13 N.E. 201.

7. Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494.

8. Marbury v. Madison, 1 Cr. 137, 169, 2 L.Ed. 60.

and also that the inspection was made by employees of the producer or shipper of milk who were authorized to make the inspection by the state officials but were on the payroll of the employer or shipper. It is clear that both of these circumstances relate to important features of the inspection of the product and the enforcement of the regulations, and that it was well within the discretion of the Health Officer of the county to consider these matters in determining whether or not the Pittsburgh regulations were equivalent to those of West Virginia, and in deciding whether the permit should be issued or refused. In our opinion the refusal of the Health Officer to issue the permit under those circumstances did not involve an abuse of discretion.

Having reached this conclusion we need not pass upon the additional contention of the appellant that the District Court was wholly without jurisdiction to grant the relief prayed in this case. The argument is based upon the long established tenet that a mandamus proceeding is not included within the description of suits of a civil nature at common law of which the federal courts were given jurisdiction by the original Judiciary Act and are now described as civil actions in 28 U.S.C. §§ 1331, 1332, and hence a mandamus may not issue in a federal District Court unless it be necessary for the exercise of its independently conferred jurisdiction.[9]

Whether it may be said that the rule prohibiting the issuance of mandamus by a federal District Court does not apply, when the jurisdiction of the court is based on diverse citizenship and the issuance of such an order becomes necessary to give effect to the judgment of the court based upon the law of the state, is a question of academic interest only, for we are satisfied that the power should not be exercised in this case even if it be possessed. Nor have we any reason to decide whether the remedy by injunction would be available under different circumstances.

The judgment of the District Court will therefore be

Reversed.

---

9. The origin and basis of the rule was described by Judge John C. Rose, a former member of this court, in his work on Federal Jurisdiction and Procedure, 4 Ed. § 192, in these words:

"There was doubtless a practical reason of public policy for reaching that conclusion—a reason which probably explains why the courts have always adhered to the determination they first reached and why Congress has never authorized the federal courts, except in some specially enumerated cases, to entertain petitions for mandamus otherwise than in aid of their other jurisdiction.

"Under our dual system of government, there are many opportunities for collision between state and federal authorities. It is not to the public interest that private litigants should be in a position to force them. If a citizen of one state conceived that he had the right to the exercise of some purely ministerial function by a public official of another, he might go into the federal courts and apply for a writ of mandamus to compel that state official to do his duty. In the long run it is probably better that he be forced to seek relief of this kind from a state tribunal. Doubtless state prejudice or partiality sometimes stands in the way of his getting what he should have. If it does, it is a lesser evil than to arouse the antagonisms always so easily stirred up when a federal court undertakes to order a state officer to do something."