Application of William S. HERRMANN, Jr., For a Judgment Pursuant to Article 78 CPLR of the State of New York, Plaintiff-Petitioner,

v.

BROOKLYN LAW SCHOOL, Defendant-Respondent.

No. 75 C 2159.

United States District Court, E. D. New York.

June 30, 1976.

Richard H. Wels, New York City, of counsel, Moss, Wels & Marcus, New York City, for plaintiff-petitioner.

Eugene R. Scheiman, New York City, of counsel, Cahill, Gordon & Reindel, New York City, for defendant-respondent.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, Chief Judge.

Defendant moves to dismiss the complaint on the ground that the court lacks subject matter jurisdiction, F.R.C.P. 12(b)(1).[1]

For the purposes of this motion, the court assumes the material allegations of the complaint to be true.

## THE COMPLAINT

The lengthy complaint (consisting of more than thirty pages (99 paragraphs)), in addition to thirty pages of exhibits, seeks review of the proceedings[2] conducted by the faculty of the Brooklyn Law School and the final determination made by the law school's Board of Trustees on September 17, 1975, dismissing plaintiff as a member of the faculty of the law school and revoking his appointment as a tenured professor of law. The complaint charges that the determination was arbitrary and capricious and not supported by substantial evidence, and that the procedures employed in the hearings contravened the regulations of the law school and the criteria, standards, and policies of the Association of American Law Schools relating to dismissal of tenured faculty members and violated plaintiff's constitutional right to administrative due process.[3]

Plaintiff invokes the jurisdiction of this court by reason of diversity of citizenship and his claim for damages in excess of $10,000, i. e., loss of compensation at the annual rate of $33,000, and his loss of tenured status and reputation in the legal and educational communities in the amount of $1,000,000.

■ Defendant bases its challenge to this court's jurisdiction on the claim that the federal court is without power to issue a writ of mandamus where a jurisdictional ground is not otherwise asserted. The cases cited in defendant's supporting memorandum, i. e., Rosenbaum v. Bauer, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743 (1887), and United States ex rel. Vassel v. Durning, 152 F.2d 455 (2d Cir. 1945) support this view.[4] The weakness in defendant's argument is its failure to recognize that plaintiff has asserted diversity jurisdiction under 28 U.S.C. § 1332, and seeks mandamus as relief ancillary to damages. Plaintiff seeks review of the procedures employed by the law school resulting in his dismissal. Plaintiff's

1. Defendant also moves to dismiss the complaint pursuant to F.R.C.P. 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. In view of the court's disposition of the case on jurisdictional grounds, it becomes unnecessary to consider the sufficiency of the complaint. Defendant's motion was accompanied by an affidavit by Dean Raymond Lisle, sworn to February 2, 1976, relating facts going to the merits. The court does not consider the affidavit except as to matters of which the court takes judicial notice, *Christman v. Skinner*, 468 F.2d 723, 725 (2d Cir. 1972); *Webb v. Nolan*, 361 F.Supp. 418, 420 (M.D.N.C. 1972), aff'd., 484 F.2d 1049 (4th Cir. 1973), appeal dismissed, 415 U.S. 903, 94 S.Ct. 1397, 39 L.Ed.2d 461 (1974).

2. N.Y.C.P.L.R. § 7804(b) (McKinney 1963) requires that an Article 78 proceeding "be brought in the supreme court, special term, in the county specified in subdivision (b) of section 506 [the venue statute]." In this case, the proceeding would have to be brought in the New York State Supreme Court, Kings County, at Special Term. Under § 7804(g), where the petition raises the issue as to whether a determination, after a hearing and upon a full record, is supported by substantial evidence, Special Term is required to transfer the proceeding to the Appellate Division of the Supreme Court. Plaintiff describes the complaint as a "Complaint and Petition" and the parties as "Plaintiff-Petitioner" and "Defendant-Respondent."

3. Plaintiff asserts other violations of state and federal constitutional rights on claims that he was being punished for exercising his first amendment right in charging a graduate applying for admission to the bar, who gave testimony adverse to the plaintiff in a deposition, with perjury (the charge was made to the Committee on Character and Fitness of the Bar Association); and for using the courts (federal and state) to vindicate a right in instituting actions against three members of the faculty for libel.

4. The continued validity of *United States ex rel. Knapp v. Lake Shore & Michigan Southern Railway Co.*, 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870 (1905), is doubtful in light of *Stern v. South Chester Tube Co.*, 390 U.S. 606, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968).

request for the direction to be restored to his professorship can be satisfied by mandatory injunction, *Stern v. South Chester Tube Co., supra.* His prayer for mandamus is not fatal. The label of the relief is unimportant.

The question posed by this attack on jurisdiction is whether the court should decline jurisdiction despite plaintiff's compliance with the jurisdictional requirements of 28 U.S.C. § 1332. Plaintiff claims his right to litigate his claim in the federal court is absolute. However, case law has limited diversity jurisdiction in some instances, including matrimonial matters, proceedings involving the parent-child relationship, probate proceedings and adoption proceedings. The analysis in these cases bears on plaintiff's right to proceed here.

■ Matrimonial matters and actions and proceedings involving the parent-child relationship were considered matters reserved for the states. Mr. Justice Holmes in *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 384, 50 S.Ct. 154, 155, 74 L.Ed. 489 (1930), cited the basis for declining jurisdiction in domestic relations matters on the ground that historically, they were not matters of a civil nature at common law or in equity being within the competence of the ecclesiastical courts. Judge Friendly, writing for the court in *Phillips, Nizer, Benjamin, Krim and Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973), pointed to the strong interest and the well-developed competence of state courts as an additional reason for abstention. In *Kamhi v. Cohen*, 512 F.2d 1051 (2d Cir. 1975), the action sought to enjoin a state court appointed receiver from seizing the husband's property. The proceeding in which the receiver was appointed was supplementary to the divorce action. The federal court abstained, indicating that plaintiff should pursue available state remedies. The court in *Solomon v. Solomon*, 516 F.2d 1018 (3d Cir. 1975), taking note of related state court litigation, declined jurisdiction over a case

arising out of a separation agreement involving claims of support for a child and the father's right of visitation. The court indicated it would assume jurisdiction where there was no history of litigation of related issues in the state court and ". . . no threat that [the] feuding [parties] would play one court system off against the other . . . ." *Id.* at 1025.

■ Federal courts will also decline jurisdiction in probate proceedings where the estate is under the control of the probate court, 13 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure, § 3610 (1975), or where the federal court judgment would affect the state court determination, *Bassler v. Arrowood*, 500 F.2d 138 (8th Cir. 1974).

The court's research uncovered only one case where diversity jurisdiction was assumed on a claim seeking review of a determination, with a prayer for mandamus relief. In *Sleeth v. Dairy Products Company of Uniontown*, 228 F.2d 165 (4th Cir. 1955), *cert. denied*, 351 U.S. 966, 76 S.Ct. 1031, 100 L.Ed. 1485 (1956), plaintiff, asserting diversity jurisdiction, sought review of a determination by a state health official who had refused to issue a permit for the distribution of milk on the ground that plaintiff failed to meet federally-approved standards. The court found no abuse of discretion and dismissed the petition.[5] In *Stern v. South Chester Tube Co., supra*, the granting of a writ of mandamus directing a Pennsylvania corporation to permit a New York stockholder to examine corporate records was an order to perform a purely ministerial duty, consistent with the common law definition of mandamus, albeit against a non-governmental agency. The proceeding in the case at bar is significantly different. It would require this court to delve into the policies and structure of the law school and inquire into the good faith of the plaintiff and the various members of the faculty who have exchanged charges, in addition to inquiring into the procedures

---

**5.** The court in *Sleeth* left open the question as to whether in a proper case mandamus would issue, suggesting that mandamus would not lie in a suit by a private litigant against a state official on grounds of comity. 228 F.2d at 169 n. 9.

employed to determine whether they complied with the law school's regulations and with administrative due process. Actions are presently pending in the state court which present some of the very issues in this proceeding. On April 2, 1973, plaintiff instituted an action in the state court against Professor Joseph Crea charging slander. On July 18, 1975, plaintiff instituted an action against the law school, the dean and two (2) professors, for an injunction restraining defendants from taking any action affecting his tenure, stating and seeking damages in the amount of $1,000,-000.[6]

## NATURE OF ARTICLE 78 PROCEEDING

■ Article 78 of the CPLR (N.Y. CPLR §§ 7801 to 7806) re-enacts Article 78 of the Civil Practice Act. Relief under this article was "previously obtained by writs of certiorari to review, mandamus, or prohibition . . . ." N.Y. CPLR § 7801 (McKinney 1963). It provides for a special proceeding for the judicial review of action by "every court, tribunal, board, corporation, officer, or other person, or aggregation of persons . . . ", N.Y. CPLR § 7802(a) (McKinney 1963). It was enacted to simplify the procedure with regard to certiorari, mandamus, and prohibition and eliminate technical problems arising from distinctions between the remedies in granting relief where the petitioner showed he was entitled to some form of relief. *Newbrand v. City of Yonkers*, 285 N.Y. 164, 33 N.E.2d 75 (1941); *Davidson v. Common Council of City of White Plains*, 40 Misc.2d 1053, 244 N.Y.S.2d 385 (S.Ct. Westchester Co. 1963). New York State courts have entertained Article 78 petitions against non-profit corporations.[7]

■ At English common law, only the King's Bench had the power to issue writs of mandamus and certiorari.[8] The writs were means of exercising control by the King's Bench over inferior courts. Blackstone, describing the power of the King's Bench as supreme judicial authority in the land, referred to the time in which the English kings personally exercised that authority. "The jurisdiction of this court is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below." III Blackstone, Commentaries on the Laws of England 42 (Lewis, ed., 1922).[9]

6. The application for a preliminary injunction in that action, to enjoin the impending hearing at the law school, was denied on August 7, 1975.

7. *Carr v. St. John's University*, 17 A.D.2d 632, 231 N.Y.S.2d 410 (2d Dept. 1962), *aff'd*, 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (university may not arbitrarily deny a degree to a student who has completed the prescribed courses); *Paglia v. Staten Island Little League, Inc.*, 38 A.D.2d 575, 328 N.Y.S.2d 224 (2d Dept. 1971) (suspension of petitioner's minor son from participation in little league baseball made by the president in violation of the corporation's constitution is reviewable); *Bonwitt v. Albany Medical Center School of Nursing*, 77 Misc.2d 269, 353 N.Y.S.2d 82 (S.Ct. Albany Co. 1973) (petition to review student's suspension for lateness).

8. It was otherwise with a writ of prohibition. III Blackstone, Commentaries on the Laws of England 112 (Lewis, ed. 1922), states: "A prohibition is a writ issuing properly only out of the court of the king's bench, being the king's prerogative writ; but for furtherance of justice, it may now also be had in some cases out of the court of chancery, common pleas, or exchequer; directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court."

9. Blackstone describes the writ of mandamus as follows:
"The writ of mandamus is confined only to the Kings Bench as it has general supervision over all inferior courts and is co-extensive with judicial sovereignty. The same theory exists in all our state governments where the common law is adopted, and the power of issuing the writ is generally confided to the highest court of original jurisdiction." III Blackstone Commentaries on the Laws of England, 42 n. 31 at 1056 (Lewis, ed., 1922). While mandamus on the one hand is the exercise of the king's authority in directing the performance of official acts, certiorari on the other hand is the method of exercising the king's general supervisory power by removing pending proceedings. IV Black-

When New York State's first constitution, on April 20, 1777, adopted the English common law and statute law as the law of the state, "the supreme court inherited the broad jurisdiction of the chief English courts to supervise the lower courts of the state," Weintraub, *Mandamus and Certiorari in New York from the Revolution to 1880: A Chapter in Legal History*, 33 Fordham L.Rev., 681, 682 (1964).[10]

The writ of certiorari expanded beyond its original bounds into various aspects of governmental action. *Id.* at 738. There was a ". . . tendency of some mid-nineteenth century courts to label many activities of officers and tribunals as judicial in order to bring them within the ambit of certiorari review." *Id.* at 739.

The Judiciary Act of 1789 provided that: "[t]he circuit courts shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars and . . . the suit is between a citizen of the State where the suit is brought, and a citizen of another state."

The remedy afforded in an Article 78 proceeding against a private corporation bears no likeness to the common law writs of certiorari or mandamus. It cannot be said that an Article 78 proceeding against a private corporation is a suit "of a civil nature at common law or in equity." Further, this special proceeding designed to accommodate to the state court system is best suited to that system. The difficulty of adapting the pleadings and proceedings to the federal court system is symptomatic of the inappropriateness of its presence here. Lastly, since proceedings involving some of

the same issues are pending in the state in actions brought prior to the institution of the instant federal action, there is a risk that the litigants "would play one court system off against the other."

For the reasons above, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is granted, and it is

SO ORDERED.

---

stone, Commentaries on the Laws of England 320 n. 13 at 1713 (Lewis, ed., 1922).

**10.** The Weintraub article reports, at 683:

"At the virtual beginning of recorded decisions in the state, 1799, Supreme Court Justice Kent, in *People v. Sessions of Chenango*, laid down the broad sweep of power which his court would exercise in maintaining traditional supervision of the lesser courts and tribunals:

All courts within the several counties have, from the first foundation of our judicial system, been regarded by law and practice as inferior courts; they can be compelled to duty by *mandamus*; they can be restrained from usurpation by *prohibition*. The cause and pleas before them, can be arrested and removed by *habeas corpus* or certiorari . . . .."