Martin CAMACHO, Plaintiff,

v.

Symra D. BRANDON, individually, Gordon Burrows, individually, John Spencer, individually, and the City of Yonkers, New York, Defendants.

No. 98 Civ. 4750(WCC).

United States District Court,
S.D. New York.

July 16, 1999.

Lovett & Gould, Jonathan Lovett, of counsel, White Plains, NY, for plaintiff.

Law Offices of Pauline M. Galvin, Symra D. Brandon and Gordon Burrows, Pauline M. Galvin, of counsel, Yonkers, NY, for defendants.

William M. Mooney, Corporation Counsel of the City of Yonkers, John Spencer and City of Yonkers, Ching Wah Chin, Sr. Assoc. Corporation Counsel, Kevin Crozier, Assoc. Corporation Counsel, of counsel, Yonkers, New York, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This action under 42 U.S.C. § 1983 is before the Court on defendants' motion for summary judgment. Fed.R.Civ.P. 56. For the reasons stated hereinafter, the motion is granted in part and denied in part.

## BACKGROUND

Until June 24, 1998, Martin Camacho ("plaintiff") was a full-time Senior Aid to the City Council for the City of Yonkers ("the City"). While plaintiff worked for multiple members of the City Council, he, because of his Spanish language skills, worked particularly closely with Councilman Fernando Fuentes, a Yonkers council member who represented a predominantly Hispanic-populated district. Fuentes joined with other members of the City Council to form the so-called "Minority Coalition." As part of this coalition, Fuentes took controversial positions on a variety of political issues, primarily related to city budgetary issues. Plaintiff alleges that Councilwoman Symra D. Brandon, Councilman Gordon Burrows, and Mayor John Spencer advised both plaintiff and Fuentes that, because of Fuentes' position on various political issues, plaintiff was in danger of losing his job. Plaintiff further contends that the defendants ultimately acted on this threat by firing him.

More specifically, plaintiff alleges that prior to the City Council's vote on the proposed budget for the Capital Improvement Projects, James Surdoval, whom plaintiff claims is a representative of Spencer, advised Fuentes that if Fuentes did not vote for the budget, plaintiff would be fired. Complaint ¶ 9; Rule 56.1 Statement ¶ 13. In fact, Fuentes specifically testified that Surdoval told Fuentes that because of his voting record on various issues, "Martin Camacho would be terminated." Fuentes Deposition Testimony at 6. Fuentes also testified that he believed Surdoval was acting at the direction of Spencer. Fuentes Deposition Testimony at 15–16. Plaintiff also alleges that defendant Burrows warned plaintiff directly that if Fuentes remained active as a member of the so-called Minority Coalition, plaintiff would be fired, and further ad-

vised him that Spencer advocated such termination. Complaint ¶ 10; Rule 56.1 Statement ¶ 14; Plaintiff's Affidavit ¶ 2. Plaintiff further contends that defendant Brandon told him that as a result of Fuentes' stance on a proposed Business Improvement District, Fuentes had put plaintiff in a "very difficult situation" with respect to his continued employment with the City of Yonkers. Complaint ¶ 12; Rule 56.1 Statement ¶ 16; Plaintiff's Affidavit ¶ 4. Moreover, plaintiff alleges that when Brandon handed him his notice of termination, she stated that he could "thank Fernando [Fuentes] who didn't vote for the CIP [Capital Improvement Projects]." Complaint ¶ 18; Rule 56.1 Statement ¶ 21; Plaintiff's Affidavit ¶ 5. This termination was announced a mere twelve hours after a disputed vote in which Fuentes and the Minority Coalition clashed with Spencer, Brandon, and Burrows. Fuentes' Deposition Testimony at 13. Finally, plaintiff alleges that Kathy Spring, Mayor Spencer's Chief of Staff, arranged to have plaintiff barred from access to the computer system at City Hall, requiring that plaintiff first request permission through Spencer's office to use these databases. Complaint ¶¶ 18–19; Rule 56.1 Statement ¶ 19; Plaintiff's Affidavit ¶ 6.

Thus, plaintiff filed this action against Brandon, Burrows, Spencer, and the City of Yonkers for: 1) deprivation of First Amendment rights in violation of 42 U.S.C. § 1983; 2) deprivation of his Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983; 3) impairment of his right to make and enforce contracts as guaranteed by 42 U.S.C. § 1981; and 4) unlawful termination in violation of Article 78 of the New York State Civil Practice Law and Rules, interposed in accordance with the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Defendants timely filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss each allegation made by plaintiff for failure to state a claim upon which relief could be granted. Because defendants re-

lied on documentary evidence outside the pleadings in making this motion, the Court converted defendants' Rule 12(b)(6) motion to a motion for summary judgment in a conference with all parties on September 11, 1998. The parties were allowed over two months from the date of this conference to conduct discovery so they might supplement their respective opposition and reply papers accordingly. For the reasons stated hereinafter, the Court denies defendants' motion to the extent it seeks to dismiss plaintiff's § 1983 First Amendment claim, but grants defendants' motion as to plaintiff's § 1983 equal protection claim, his § 1981 impairment of contract claim, and his claim under Article 78 of the New York State Civil Practice Law and Rules.

## DISCUSSION

### I. First Amendment Claim Under Section 1983

#### A. Introduction

In order to prevail on this § 1983 freedom of speech claim, plaintiff must demonstrate by a preponderance of the evidence that: 1) the speech at issue is protected; 2) that he suffered an adverse employment action; and 3) there was a causal connection between the protected speech and the adverse employment action. *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994). There is no debate amongst the parties as to whether the speech at issue is protected, since the ability of a city council member to cast an unfettered vote on major issues impacting the City of Yonkers, such as approving the budget and making capital improvements, is clearly a matter of public concern. *See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir.1993). Similarly, there is no dispute as to whether a harmful employment action was taken, since plaintiff was fired from his job. *Id.*

Finally, this is a rare summary judgment motion in a § 1983 First Amendment

case in which the movants do not dispute the causal connection between the speech and the harmful employment action. Plaintiff has alleged that each individual defendant communicated to plaintiff or to Fuentes that if Fuentes continued to express various political views, plaintiff would be terminated. Thus, the protected speech is directly linked to the adverse employment action, especially since defendants allegedly made good on their threats, and plaintiff was terminated a mere twelve hours after Fuentes cast a controversial vote. Defendants apparently concede this connection between Fuentes' speech and the adverse employment action taken against plaintiff for purposes of this motion, since they have not submitted a single affidavit on this issue, have utterly failed to submit a Statement of any kind pursuant to Local Rule 56.1, and have not even addressed in their Memorandum of Law whether these threats were made or carried out. Their failure to submit a Rule 56.1 Statement is, of course, a violation of the Local Rules of the Court. *See, e.g., Fernandez v. DeLeno,* —— F.Supp.2d ——, —————96 Civ. 5476(BDP), 1999 WL 343351, *1–2 (S.D.N.Y. May 24, 1999).[1]

Instead, defendants have taken a different tack, arguing, first, that since plaintiff himself has not engaged in protected speech, he has no standing to bring a civil rights action to assert the First Amendment rights of Councilman Fuentes. Second, defendants argue that because plaintiff was a "policymaker," defendants were entitled to seek his termination even if his firing was based upon the exercise of First Amendment speech, because that speech had the potential to disrupt plaintiff's ability to perform his job effectively. *See, e.g., Heil v. Santoro,* 147 F.3d 103, 109 (2d Cir.1998); *McEvoy v. Spencer,* 124 F.3d 92, 105 (2d Cir.1997). We reject each argument for the reasons stated below.

### B. *Third–Party Standing*

■ We concede that plaintiff's claim raises a somewhat complex legal issue. Plaintiff has brought suit for a violation of the First Amendment freedom of speech clause even though, by his admission, his termination had nothing to do with any protected speech by the plaintiff himself. Instead, plaintiff's § 1983 First Amendment claim is based entirely on the speech of another, namely that he was fired because defendants were angered by various political decisions made by Councilman Fuentes. Defendants are misguided, however, in their bald assertion that plaintiff has no cause of action under § 1983 because his "claims are not based on his own First Amendment rights." Defendants' Memorandum of Law at 10. While a plaintiff typically lacks standing to assert the rights of others, *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), this rule is "not constitutionally mandated, but rather stem[s] from a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig v. Boren,* 429 U.S. 190, 193, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Sometimes, however, the constitutional question is not speculative, and allowing for a third party to assert the constitutional claim of another is the only way to adequately protect the constitutional rights of another. *Id.* In these instances, the Supreme Court has instructed that district courts may grant third-party standing if: (1) the relationship between the plaintiff and the third party is such that the plaintiff is fully, or very nearly as effective a proponent of the third party's right as the third party itself, and (2) there is some obstacle to the third party asserting the right. *Singleton v. Wulff,* 428 U.S. 106, 114–16, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

---

**1.** In fact, we are only able to grant partial summary judgment for defendants on the claims discussed to follow because, even assuming all the facts alleged by plaintiff to be true, we are still compelled to dismiss these claims.

Moreover, in First Amendment cases, the Supreme Court has relaxed third-party standing rules when the effect of a challenged rule may chill protected speech. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (stating " '[l]itigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression' ") (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Concern that laws will stifle speech protected by the First Amendment justifies lowering the jurisdictional standing requirements. *Eisenstadt v. Baird,* 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (noting that the Court has eased strict construction of traditional standing rules in First Amendment cases "without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect of freedom of speech").

Applying these principles to the instant case, we hold that plaintiff has third-party standing to bring this § 1983 claim. First, the relationship between the plaintiff and the third party is such that the plaintiff will be as effective a proponent of the third party's right as the third party himself. *Singleton,* 428 U.S. at 114–15, 96 S.Ct. 2868. This is not a case in which plaintiff seeks only to vindicate only his own rights, and the rights of the third party are merely incidental. *See, e.g., Moody v. Jefferson Parish Sch. Bd.,* 803 F.Supp. 1158, 1164 (E.D.La.1992). Instead, vindicating the rights of Fuentes is "inextricably bound up" with plaintiff's own cause of action. *Singleton,* 428 U.S. at 114, 96 S.Ct. 2868. As explained above, plaintiff can only prevail if, inter alia, he shows that Fuentes engaged in speech that is protected by the First Amendment and proves that there was a causal connection between the protected speech and the action taken by defendants. *Blum,* 18 F.3d at 1010. Thus, this case does not present the danger feared in *Singleton,* that the plaintiff's interest might diverge from the interest of the third party he purportedly seeks to protect, because plaintiff's ability to prevail is wholly intertwined with proving that defendants sought to interfere with Fuentes' First Amendment rights. *Compare Hong Kong Supermarket v. Kizer,* 830 F.2d 1078 (9th Cir.1987) (a grocery store sought third-party standing on behalf of its customers, and attempted to enjoin all future operation of a federal aid program, but since the interests of customers of the store would be best served if the program continued to operate, the interests of plaintiff and the customers are not "inextricably bound up"). Plaintiff can only prevail by vindicating the rights of Fuentes, and any remedy afforded plaintiff will in no way compromise the rights of Fuentes.

Further, this is a classic case in which there exists an obstacle to the third party's assertion of the right at stake. *Singleton,* 428 U.S. at 116, 96 S.Ct. 2868. If plaintiff's allegations are true, defendants were angry at Councilman Fuentes because of his political views, but, because Fuentes is a publicly elected official, knew they could not fire him. Instead, plaintiff alleges, defendants determined that they would fire plaintiff, who had a close relationship with Fuentes, and who could be terminated at will. As a consequence, while plaintiff has stated a paradigmatic case in which protected First Amendment speech has been burdened by state actors, Fuentes has suffered no cognizable injury whatsoever. If these allegations are true, however, plaintiff has suffered a significant injury, specifically the loss of his full-time job. Thus, Fuentes' lack of damages creates a significant barrier to the ability of this third party to protect the constitutional right which is at stake, and granting plaintiff third-party standing is the only means

by which this constitutional right can be effectively protected. *See, e.g., Craig,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (bar owners allowed to assert rights of underage males, because these men would probably not assert the constitutional right to be treated in the same way as women).

Finally, in applying this analysis, we note the strong similarities between the instant case and *Romano v. Harrington,* 664 F.Supp. 675 (E.D.N.Y.1987); *see also El Dia, Inc. v. Rossello,* 30 F.Supp.2d 160 (D.P.R.1998). In *Romano,* 664 F.Supp. at 677, plaintiff was a faculty advisor responsible for overseeing the publication of a student newspaper. Plaintiff was removed from this position after one of his students published a controversial editorial in the newspaper, and the teacher brought suit under § 1983 for a deprivation of First Amendment rights. *Id.* Like the case before us, plaintiff himself had engaged in absolutely no speech whatsoever; his § 1983 claim was based entirely on the speech of his student. Nonetheless, the court ruled that basic principles of third-party standing permitted plaintiff to state a claim under § 1983, specifically finding that the teacher would effectively vindicate the student's rights and that the student was unlikely to bring suit on his own behalf. *Id.* at 681 (citing *Singleton,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826). For precisely the same reasons, we hold that plaintiff can assert the rights of Councilman Fuentes.[2]

### C. *Plaintiff as Policymaker*

■ Defendants' analysis under *Pickering v. Bd. of Ed. of Township High Sch.*

*Dist.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) is without merit. It is well-settled that the government can avoid liability by establishing that the employee's conduct interfered with the government's effective and efficient fulfillment of its responsibilities to the public. *See, e.g., Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). However, plaintiff has alleged, with supporting affidavits and deposition testimony, that defendants conspired to fire him because of Fuentes' protected speech. Thus, we are mystified by defendants' argument that plaintiff had to be fired because his conduct interfered or potentially interfered with the fulfillment of his job responsibilities. Plaintiff did not engage in any speech whatsoever that is pertinent to this case, and defendants have not argued otherwise. In fact, their failure to submit a Rule 56.1 Statement effectively precludes them from so arguing. Instead, defendants and plaintiffs both have engaged in a lengthy analysis of whether plaintiff was a "personal staff/policymaker." *McEvoy,* 124 F.3d at 103. This analysis is wholly superfluous, because even if plaintiff is a "policymaker," defendants have not come forward with a single piece of evidence tending to show that plaintiff's speech had the potential to interfere with the operations of government. *Jeffries v. Harleston,* 52 F.3d 9, 13 (2d Cir.1995). Even by defendants own admission, in their lengthy analysis of the question of third-party standing, this case has nothing to do with the speech of plaintiff. *See* Defendants'

2. The Court has decided to withhold decision on plaintiff's freedom of association of claim. Since we have decided to deny defendants' motion regarding plaintiff's freedom of speech claim under § 1983, and thus determined that a cognizable First Amendment claim exists, and we need not decide the merits of the freedom of association claim at this time. Both plaintiff and defendants have hardly addressed the freedom of association issue in their respective Memoranda of Law; moreover, defendants have failed to submit any Local Rule 56.1 Statement whatsoever, and plaintiff has submitted his Statement without a single citation. As a consequence, we will wait until hearing the evidence at trial to decide this issue, since we need not make such a determination until it is time to instruct the jury. We are dubious of plaintiff's ability to show that the fact that he often worked for Councilman Fuentes while employed by the City is sufficient to state a freedom of association claim; if the plaintiff is able to make such a claim, however, we recognize that he would then have a claim for a direct violation of his own constitutional rights, and would no longer need to rely on third-party standing.

Memorandum of Law at 10–13. The Court thus dismisses defendants argument that plaintiff's speech had the potential to interfere with his job functions since, by defendants own admission, plaintiff engaged in no speech whatsoever that is at issue in this case.[3]

### D. Issues Specific to Defendant Spencer

For the reasons enunciated above, defendant Spencer's assertion that any claim against him must be dismissed, because he had no power to hire or fire plaintiff, must fail. *See* Defendants' Memorandum of Law at 5 (arguing that the City Charter gives the Mayor appointive power over only administrative and not legislative employees). Plaintiff has never alleged that defendant Spencer personally fired him. Instead, plaintiff has alleged that each of the defendants, all political allies, conspired to terminate plaintiff because of their disapproval with Fuentes' voting record. If the defendants thus acted in concert, it is of little import if, for example, only one of the defendants was formally empowered under the City Charter to fire employees. One need not be vested with the formal power to fire an individual in order to take adverse employment action against them. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (holding that the action taken need not be the "substantial equivalent of dismissal" in order to constitute adverse employment action); *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir.1995) (holding that mere reprimand, even if it does not result in actual dismissal, can constitute adverse employment action).

### E. Issues Specific to Defendant City of Yonkers

Defendant City of Yonkers claims that the complaint must be dismissed as against the City simply because while plaintiff was terminated, he personally did not engage in any protected First Amendment speech. Defendants' Memorandum of Law at 21. For the reasons already enunciated, however, plaintiff need not rely on such direct injury, since he has stated a cognizable claim for third-party standing, and thus the complaint shall not be dismissed as against the City.[4]

### F. Qualified Immunity Claim for All Defendants

For the reasons explained, supra, each of the defendant's qualified immunity claims must fail. The doctrine of qualified immunity protects government

---

3. We also note that it is not at all clear whether plaintiff even is a "policymaker" for purposes of this analysis. While defendants have argued that plaintiff was imbued with broad ranging and highly confidential responsibilities, Defendants' Memorandum of Law at 8–9, plaintiff has offered affidavits and deposition testimony tending to show that his job duties focused on photocopying, answering the phone, typing, and even cleaning. Fuentes Deposition Testimony at 22; Carol Serchen Deposition Testimony at 10–13; Dorothy Neumayer Deposition Testimony at 30–38. In fact, it is clear from the testimony of Dilia Gonzalez, who defendants themselves have strenuously argued was hired to replace plaintiff, that she was hired on the basis of her typing, computer, and phone answering skills, as well as her ability to speak Spanish. Gonzalez Declaration at ¶ 3; Gonzalez Deposition at 18–27. Needless to say, the typing skills of a prospective applicant are rarely pertinent in the hiring of someone with final policymaker authority on behalf of a major municipality.

4. Plaintiff's Memorandum of Law on this subject is woefully inadequate, and his blanket assertion that the City is liable simply because the named defendants possess generalized policymaking authority is a misstatement of the law. *See* Plaintiff's Memorandum of Law at 63. However, since the City did not even raise the issue of whether the individual defendant's had final authority over employment decisions such that their conduct could constitute an official act or custom by the City, *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and since the City failed to submit any Rule 56.1 Statement, we will not dismiss the complaint against the City.

officials from liability for civil damages if the challenged action "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, plaintiff has alleged that defendants specifically warned him and Fuentes that because of Fuentes political views, they intended to fire plaintiff, and then carried out their threat. No reasonable person acting in 1998 could believe this conduct to be permissible under § 1983. We also reject defendants' argument that because plaintiff was a policymaker, they had a right to fire him because of his political views. First, it is highly doubtful that plaintiff was a policymaker. More importantly, even if plaintiff did possess policymaking authority, plaintiff alleges that the defendants sought his termination not because of his political views, but as punishment for the views of Fuentes, and plaintiff's own political views are wholly irrelevant to that claim. Finally, while the question of whether plaintiff would have standing to litigate issues related to the constitutional rights of Fuentes is somewhat complex, we note that federal courts in New York had found such third-party standing in a very similar § 1983 case over ten years before. *See Romano,* 664 F.Supp. 675. Moreover, the general principle of third-party standing, upon which our decision and *Romano* are based, has been established for well over forty years. *See Barrows,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586. For these reasons, defendants' qualified immunity claim must fail.

## II. *Section 1983 Equal Protection Claim*

■ Plaintiff claims that defendants have violated his right to equal protection under the Fourteenth Amendment, specifically that he was terminated because he is Hispanic, and thus he has brought suit under § 1983 for the deprivation of this constitutional right by a state actor. However, plaintiff presents the Court with no evidence, either in his Memorandum of Law, affidavits, or his Rule 56.1 Statement, related to discrimination on the basis of race or ethnicity. Every factual allegation made by plaintiff against defendants relates to Fuentes' voting record (on issues, incidentally, that had nothing to do with race or ethnicity). As previously noted, plaintiff alleges that prior to the City Council's vote on the proposed budget for the Capital Improvement Projects, James Surdoval, who plaintiff alleges acted at the direction of defendant Spencer, advised Fuentes that if Fuentes did not vote for the budget, plaintiff would be fired. Complaint ¶ 9; Rule 56.1 Statement ¶ 13; Fuentes Deposition Transcript at 8–16. Plaintiff also alleges that defendant Burrows warned plaintiff directly that if Fuentes remained active as a member of the so-called Minority Coalition, plaintiff would be fired, and further advised him that defendant Spencer advocated such termination. Complaint ¶ 10; Rule 56.1 Statement ¶ 14; Plaintiff's Affidavit ¶ 2. Plaintiff further contends that defendant Brandon told him that as a result of Fuentes' stance on a proposed Business Improvement District, Fuentes had put plaintiff in a "very difficult situation" with respect to his continued employment with the city. Complaint ¶ 12; Rule 56.1 Statement ¶ 16; Plaintiff's Affidavit ¶ 4. Finally, plaintiff alleges that defendant Brandon fired him, and as she handed him his notice of termination, she stated that he could "thank Fernando [Fuentes] who didn't vote for the CIP [Capital Improvement Projects]." Complaint ¶ 18; Rule 56.1 Statement ¶ 21; Plaintiff's Affidavit ¶ 5. For each of these reasons, enunciated more fully above, plaintiff has stated a cognizable claim under § 1983 for his unlawful termination in retaliation for the exercise of First Amendment rights. Yet, because these allegations represent the entirety of plaintiff's factual allegations against defendants, no equal protection claim can be maintained. According to plaintiff's own version of the events surrounding his firing, it was done in retalia-

tion for Fuentes' voting practices, and plaintiff has not alleged a single fact supporting an allegation for discrimination based upon race or ethnicity.

There is simply no evidence that plaintiff was terminated because of his race. Plaintiff's counsel has essentially made no attempt to substantiate this claim in any of their voluminous submissions to this Court, and we presume the strictures of Fed.R.Civ.P. 11 have precluded them from substantial argument on this cause of action. In analyzing the complaint, however, it appears that plaintiff believes that because the defendants knew that he was the only staff person available to communicate with the Spanish speaking populace, then his firing somehow constitutes a violation of plaintiff's equal protection rights. *See* Plaintiff's Complaint at ¶ 16(c). Such bald assertions are insufficient for purposes of this motion; we must concern ourselves with only the question of whether plaintiff has alleged any facts sufficient to show that he was terminated because of his race or ethnicity. The Court has carefully inspected the record for any factual support for the proposition that plaintiff was fired because of his race. Plaintiff has offered none. This is not surprising since plaintiff was replaced by an Hispanic employee. *See* Gonzalez Deposition Transcript. Plaintiff's claim that he was terminated in violation of his right to equal protection under the Fourteenth Amendment is dismissed with prejudice.

### III. *Section 1981 Claim*

Plaintiff's § 1981 claim is predicated upon the allegation that he was discriminated against because he is Hispanic. *See, e.g., Hernandez v. New York City Law Dep't. Corp. Counsel,* 94 Civ. 9042(SS)(AJP), 1997 WL 27047 (S.D.N.Y. Jan. 23, 1997). However, for the reasons

stated above in dismissing plaintiff's equal protection claim, plaintiff's § 1981 claim must also fail. Every factual allegation made by plaintiff relates to a retaliatory firing by defendants in an effort to influence Fuentes' voting record. Plaintiff was not discriminated because of his race or national origin simply because he and Fuentes both are Hispanic and/or because his firing may have had a negative impact on the Hispanic community's ability to obtain effective representation. There is not a single fact presented to this Court that any of the defendants sought to fire plaintiff because of his race or national origin. Indeed, as previously mentioned, plaintiff was replaced by another Hispanic employee. Plaintiff's § 1981 claim is dismissed with prejudice.[5]

### IV. *Proposed Title VII Claim*

Defendants have extensively briefed the question of whether plaintiff's proposed Title VII claim has merit. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. However, the complaint before us contains no claim under Title VII. As the complaint itself makes clear, plaintiff has merely expressed an intention to amend the complaint to include a Title VII cause of action after receipt of a Notice of Right to Sue letter from the Equal Employment Opportunity Commission. *See* Complaint at ¶ 1. For the reasons stated above in dismissing plaintiff's § 1981 and equal protection claims, the Court is extremely dubious of plaintiff's ability to state a cause of action for discrimination based upon his race under Title VII. However, there is no Title VII claim included in the complaint before this Court, nor a motion seeking leave to amend the complaint to include such a claim. Therefore,

---

**5.** We note, without deciding, that plaintiff also must prove that his termination impaired his ability "to make and enforce contracts," as required by § 1981(a). It would be a close legal question whether plaintiff's position as an at-will employee is sufficient to satisfy this requirement. The issue is further complicated by the fact that plaintiff's salary was set based upon a collective bargaining agreement, which may or may not bolster his contractual impairment claim.

we see no reason to rule on the viability of plaintiff's potential Title VII claim.

## V. State Law Claim

■ Asking the Court to assert its supplemental jurisdiction pursuant to 28 U.S.C. § 1367, plaintiff has included a somewhat baffling state law claim in its complaint. Specifically, plaintiff has claimed that because "defendants' termination of plaintiff's employment was unlawful, arbitrary, and capricious and is subject to nullification pursuant to Article 78 of the New York State Civil Practice Law and Rules, [this Court]," in accordance with Article 78, [should order] "plaintiff's retroactive reinstatement to his position...." Plaintiff's Complaint at ¶ 33. Plaintiff's briefing on this issue is meager, at best, and both his complaint and Memorandum of Law fail to even mention whether plaintiff has pursued an Article 78 proceeding in state court. Consequently, plaintiff has left the Court to conjecture as to the basis of this claim. We assume, since there is no mention by either plaintiff or defendants of a prior Article 78 hearing, that no such hearing was conducted, and that plaintiff is now time-barred from seeking such redress since, under New York law, an Article 78 proceeding against a public body or officer "must be commenced within four months after the determination to be reviewed becomes final and binding." N.Y.C.P.L.R. § 217. It therefore appears that plaintiff is asking this Court to function as a state tribunal and conduct an Article 78 hearing. We decline any such assignment. Among other reasons therefor, if this Court were to conduct an Article 78 hearing, we would be effectively overruling the New York Legislature's creation of a four-month statute of limitations for such hearings. Our jurisdiction over pendent state claims is purely discretionary under 28 U.S.C. § 1367, and we see no reason to exercise that discretion by adjudicating a purely state procedural remedy. See, e.g., Support Ministries for Persons with Aids, Inc. v. Village of Waterford, 799 F.Supp. 272 (N.D.N.Y. 1992).

■ In the alternative, it may be that plaintiff was actually afforded an Article 78 hearing, and he now seeks to argue that this process was constitutionally deficient.[6] While this Court is left only to conjecture because of the poor pleading and briefing on this matter, this may explain plaintiff's vague allusion to his termination being "unlawful, arbitrary, and capricious," Plaintiff's Complaint at ¶ 33, since Article 78 provides for the annulment of administrative decisions that are lacking a sound rational basis, or are arbitrary, capricious or erroneous as a matter of law. N.Y.C.P.L.R. §§ 7801–03; Imperial Sanitation Corp. v. City of New York, 97 Civ. 682(SJ), 1997 WL 375745, *1 (E.D.N.Y. June 23, 1997). As explained in another case formerly brought by plaintiff's counsel in this jurisdiction, we will not sit in review of the adequacy of this state process. Lucchese v. Carboni, 22 F.Supp.2d 256 (S.D.N.Y.1998). Since "[a]n Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in this Court," id. at 258, this claim should be litigated in state court, and we decline to exercise supplemental jurisdiction over plaintiff's Article 78 claim.

## CONCLUSION

For the reasons stated above, the motion by defendants Brandon, Burrows, Spencer, and the City of Yonkers is denied to the extent that it seeks dismissal of plaintiff's claims under § 1983 for retaliation for the exercise of protected First Amendment rights. However, we grant defendants motion to the extent that they seek to dismiss plaintiff's claim for alleged violation of his right to equal protection

---

**6.** If plaintiff seeks to argue that his prior hearing was deficient, we are surprised that he has not submitted any discussion of what occurred at that hearing, or any portion of the record whatsoever.

under § 1983, for violation of his rights under § 1981, and for violation of Article 78 of the New York State Civil Practice Law and Rules; these claims are dismissed with prejudice. The Court makes no decision related to plaintiff's proposed Title VII claim. Finally, defendants' motion for sanctions under Fed.R.Civ.P. 11 is denied.

SO ORDERED.