**Thomas G. VERBEEK, Plaintiff,**

v.

**Conrad TELLER, individually, Vincent Toomey, individually, Robert Nordman, individually, Frederick Hager, individually, Neil Hanrahan, individually, Raymond Dean, individually, Mark Raynor, individually, Ora Bell Barnett, individually, Ann Scricca, individually, and the Incorporated Village of Westhampton Beach, New York, Defendants.**

No. CV 99–0879.

United States District Court,
E.D. New York.

Sept. 29, 2000.

Lovett & Gould, by Jonathon Lovett, White Plains, NY, for Plaintiff.

Trager, Cronin & Byczek, LLP, by Rocco G. Avallone, Lake Success, NY, for Defendants.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiff Thomas G. Verbeek ("Verbeek") commenced this action against defendants Village of Westhampton Beach ("Village") and various Village trustees, police officers, and counsel pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights to free speech, to free association, and to petition the government for redress of grievances; Fourth Amendment right to be free from unlawful search and seizure; and Fourteenth Amendment right to equal protection; he also purports to assert state supplemental claims. The individual defendants are Police Chief Conrad Teller ("Teller"); Police Officers Robert Nordman ("Nordman"), Frederick Hager ("Hager"), and Neil Hanrahan ("Hanrahan"); Police Officers and Trustees Raymond Dean ("Dean") and Mark Raynor ("Raynor"); Trustee Ora Bell Barnett ("Barnett"); and Village counsel Vincent Toomey ("Toomey") and Ann Scricca ("Scricca"). Presently before the Court is defendants' motion to dismiss pursuant to Rules 12(b) and 12(h)(3) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion.

## I. BACKGROUND

For present purposes, the allegations of the complaint, which are accepted as true, can be summarized as follows. Verbeek was employed as a police officer in the Village until his termination on November 23, 1998, following the second of two disciplinary proceedings brought against him by the Village. During his employment, and prior to the first disciplinary proceeding, Verbeek alleges that he complained about a variety of illegal and improper activities by various Village police officers and their relatives, some of whom Verbeek had arrested. On or about February 21, 1996, Teller had charges brought against Verbeek for dereliction of duty, allegedly as a result of Verbeek's "repeated expres-

sions of concern regarding the [alleged] wrongdoing" by various police officers and their relatives. Complaint ¶ 16. Until then, Verbeek allegedly had a clear police record for over 11 years.

On March 21, 1996, a non-public hearing was commenced, but was then discontinued after a witness allegedly testified that one of the "principal charges against [Verbeek] was false." Complaint ¶ 17. The Village was permitted to amend the charges, and on March 26, 1996, further disciplinary charges were brought against Verbeek, including charges for leaving his patrol car without authority, interfering with a departmental investigation, and making false entry on a police departmental record. A hearing was then commenced before Hearing Officer Robert Kearon ("H.O.Kearon"). During the hearing, Verbeek raised a "whistleblower" defense under New York State Civil Service Law § 75-b. On July 28, 1996, H.O. Kearon rejected Verbeek's whistleblower defense and found Verbeek guilty of certain charges of dereliction of duty and insubordination.

After the hearing, Teller "summarily demoted" Verbeek to patrolman, subordinate to Hager. Complaint ¶ 21. In demoting Verbeek, Teller allegedly was motivated "in whole and/or in substantial respect by reason of [Verbeek's] evidence, adduced at the disciplinary hearing, regarding corruption and/or maladministration of the Police Department and criminal activity engaged in by members of the Department." Id. The demotion was ratified by the Village Board of Trustees (the "Board").

On August 7, 1996, Verbeek returned to duty and discovered that his locker at police headquarters had been broken into and that his personal and other property had been stolen. During August 1996, Teller allegedly issued orders forbidding Verbeek from (1) speaking to the Village trustees; (2) reporting the burglary to other law enforcement agencies, including the FBI; (3) meeting, or requesting to meet, with any other police officer in the depart-

ment; and (4) supervising any other police officer in the department. In addition, Teller allegedly forbid other officers from speaking with Verbeek about the disciplinary hearing, barred outside law enforcement agencies from investigating the burglary, and identified two police officers as suspects in the burglary. Moreover, Hager, allegedly at Teller's request, suspended Verbeek from the Police Benevolent Association ("PBA").

On or about October 29, 1996, Teller requested that additional disciplinary charges be filed against Verbeek, allegedly in retaliation for Verbeek's having "adduced evidence of misconduct and/or criminal behavior by members of the Department and/or certain of their family members." Complaint ¶ 31. However, Teller allegedly was "rebuffed" by the Village Board. Complaint ¶ 32. Nevertheless, Teller and Toomey allegedly "entered into an agreement to draft and prefer" additional "retaliatory disciplinary charges" against Verbeek, charges Teller "subsequently admitted were in substantial respect entirely fabricated." Id. On December 30, 1996, Toomey and Teller charged Verbeek, allegedly "without authority or permission of the Village Board and contrary to a directive of the [Village] Mayor," Complaint ¶ 33, and then suspended and expelled Verbeek from police headquarters.

The Board then discharged Toomey allegedly because of the "unlawful preferral" of charges against Verbeek, Complaint ¶ 34, and retained Scricca as Village counsel. Scricca then allegedly committed improper acts to "insur[e] that the second disciplinary proceeding move forward," including threatening or intimidating certain trustees and directing the destruction of certain evidence. Complaint ¶¶ 35–37. Ultimately, the Board approved the prosecution of disciplinary charges against Verbeek.

Verbeek elected to have the second hearing open to the public, including the

media. H.O. Campasano allegedly demonstrated bias against Verbeek for having sought a public hearing.

During the second disciplinary proceeding, Teller, Hager, and Kametler, directly or through the PBA, allegedly sought to improperly influence Board members to secure Verbeek's termination. Teller and Hager, then PBA President, allegedly issued a memorandum instructing other police officers not to communicate with Verbeek, purportedly to impair Verbeek's defense of the charges and his exercise of associational rights.

Verbeek alleges that Teller, Doyle, and Nordman "agreed to and thereafter testified falsely" against Verbeek in an effort to secure his termination, purportedly to punish Verbeek for "having engaged in First Amendment protected speech." Complaint ¶ 47. Verbeek asserts that he proved during the hearing that (1) Teller perjured himself in the first disciplinary hearing; (2) that Hager had, with impunity, committed certain criminal acts; (3) that Scricca had tampered with the Board on the preferral of the charges and ordered the destruction of evidence regarding the fabricated nature of the charges; (4) that Teller and the PBA, acting through Hager, had directly sought to influence the Board during the pendency of the proceeding to secure Verbeek's termination; and (5) that Teller and other police department members "actively interfered" with Verbeek's ability to defend against the charges by, *inter alia,* "prohibiting" him from communicating with other police department members. *Id.*

Following the conclusion of the hearing, H.O. Campasano issued a "Hearing Officer's Report and Recommendation," dated October 30, 1998 (the "R & R"). In the R & R, H.O. Campasano rejected Verbeek's whistleblower defense and found Verbeek guilty of certain acts of misconduct and conduct unbecoming a police officer, and recommended that Verbeek's employment be terminated. Verbeek alleges that H.O. Campasano was biased against him and

engaged in ex parte communications with Scricca. Verbeek also alleges that H.O. Campasano falsely accused Verbeek of attempting to bribe him. Moreover, according to Verbeek, H.O. Campasano caused a copy of the R & R to be delivered to the Village on or about October 30, 1998, but did not have a copy sent to Verbeek's counsel until three weeks later, thereby giving Verbeek's counsel only a matter of hours to prepare a submission concerning his punishment to the Village, which was scheduled to meet and vote on the R & R on November 23, 1998.

On November 23, 1998, the Board voted to terminate Verbeek's employment with the Village, as H.O. Campasano had recommended. Verbeek claims that defendant Trustees Dean, Raynor, and Barnett were: (1) "improperly influenced by reason of *ex parte* contacts between them and the PBA, Teller and/or Scricca which contacts were in part the subject of the disciplinary hearing record and in part were not evidenced by that record"; and (2) "motivated entirely and/or in substantial respect to punish [Verbeek] for his having expressed his opposition to Village corruption, misfeasance, malfeasance, criminal wrong doing [sic], and mismanagement of the Police Department." Complaint ¶¶ 53–55. Verbeek further asserts that the disciplinary proceedings constituted a selective prosecution against him for his exercise of First Amendment rights as "no disciplinary action and/or material disciplinary action" was brought against other officers for "criminal activities and/or considerably more serious and actual infractions of Departmental regulations than those with respect to which [Verbeek] was charged." Complaint ¶ 56.

Based on more than 20 pages of factual allegations, Verbeek asserts seven claims, including the following five federal claims: (1) violation of his First Amendment right to free speech; (2) violation of his First Amendment right to freedom of association; (3) violation of his First Amendment right to petition the government for re-

dress of grievances; (4) violation of his Fourteenth Amendment right to equal protection (in that he was selectively prosecuted based on his "whistleblowing" concerning matters of public concern); (5) violation of his Fourth Amendment right to be free from unlawful search and seizure (based on the burglary of his locker). Verbeek purports to assert as two supplemental state claims: (1) that the disciplinary determination was "arbitrary, capricious, and otherwise illegal" and must be vacated under New York Civil Practice Law and Rules ("CPLR") Article 78 (the "Article 78 claim"); and (2) that a promotion of Nordman to sergeant was "unlawful, null and void." Complaint ¶¶ 68–72. Verbeek requests, *inter alia,* compensatory and punitive damages and reinstatement with back pay and benefits.

## II. *DISCUSSION*

Defendants initially argued that the complaint must be dismissed as against the Village for failure to state a claim upon which relief can be granted and against the individual defendants based on absolute immunity and, alternatively, qualified immunity. At oral argument, however, this Court questioned the appropriateness of entertaining Verbeek's Article 78 claim and whether certain of his claims were barred by collateral estoppel. The parties were then given the opportunity to address these issues in supplemental briefs. In their supplemental brief, defendants argue that Verbeek's claims based on retaliation and selective prosecution for his whistleblowing are barred by collateral estoppel; defendants also argue an additional ground for dismissal, namely, that the complaint must be dismissed under the *Rooker–Feldman* doctrine. In his supplemental brief, Verbeek addresses only the collateral estoppel defense, which Verbeek argues does not apply for various reasons.

Before addressing any of the grounds raised by defendants in support of their motion, the Court will first address whether it should entertain Verbeek's Article 78 claim. In his Article 78 claim, Verbeek asks this Court to vacate the determination of the second disciplinary proceeding because it was "arbitrary, capricious, and otherwise illegal" for a variety of reasons, including (1) Scricca's alleged misconduct; (2) H.O. Campasano's alleged bias; (3) Teller's and/or the PBA's alleged tampering with the Board's vote on the preferral of the disciplinary charges and impairing Verbeek's right of association and ability to defend against the charges; and (4) Teller, Hager, and Kametler's alleged threats and intimidation of certain trustees; and (5) selective prosecution of Verbeek. Complaint ¶ 69. Essentially, Verbeek asks this Court to "function as a state tribunal and conduct an Article 78 hearing." *Birmingham v. Ogden,* 70 F.Supp.2d 353, 372 (S.D.N.Y.1999).

At oral argument, Verbeek's counsel argued that it was appropriate for this Court to entertain his Article 78 claim, but he did not advise this Court that in several recently reported cases, in which he was counsel, district courts refused to exercise supplemental jurisdiction over similar claims. *See Birmingham,* 70 F.Supp.2d at 372–73; *Camacho v. Brandon,* 56 F.Supp.2d 370, 380 (S.D.N.Y.1999); *Lucchese v. Carboni,* 22 F.Supp.2d 256, 258 (S.D.N.Y.1998). For example, the district court in *Birmingham* refused to exercise supplemental jurisdiction over a similar claim, stating:

> The courts that have addressed such a request have noted that Article 78 is "a novel and special creation of state law" and "a purely state procedural remedy." Article 78 provides a special proceeding for judicial review of action by "every court, tribunal, board, corporation, officer, or other person, or aggregation of persons...." N.Y.C.P.L.R. § 7802(a). "[I]t cannot be said that an Article 78 proceeding ... is a suit of a civil nature at common law or in equity." Rather, Article 78 actions were "designed for the state courts, and are best suited to adjudication there."

Counsel for plaintiff, having served as counsel in both the *Camacho* and *Lucchese* cases, is well aware that the federal courts are loath to exercise jurisdiction over Article 78 claims. Even where a plaintiff has one or more federal claims still alive—as did plaintiffs Camacho and Lucchese, and as does Birmingham—the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements. Article 78 "is designed to facilitate a 'summary disposition' of the issues presented, [and] ... is 'a fast and cheap way to implement a right.'" I decline to exercise supplemental jurisdiction over plaintiff's Article 78 claim, and remit him to state court to seek review of his termination through the special vehicle the state has provided for such review.

*Birmingham,* 70 F.Supp.2d at 372–73 (citations omitted). Based on the reasoning in *Birmingham,* this Court declines to exercise jurisdiction over Verbeek's Article 78 claim. Accordingly, Verbeek's Article 78 claim is dismissed.

Notably, Verbeek's time to commence an Article 78 proceeding has not yet run. Although an Article 78 proceeding must be commenced "within four months after the determination to be reviewed becomes final and binding," CPLR § 217, Verbeek filed this action within that four-month period, and the statute of limitations "is tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period," 28 U.S.C. § 1367(d). Given this Court's dismissal of Verbeek's Article 78 claim, the Court will allow Verbeek the opportunity to pursue an Article 78 proceeding in state court, if he chooses to do so.

Accordingly, defendants' motion to dismiss is denied without prejudice to renewal, and the action is stayed pending determination of the Article 78 proceeding or until Verbeek notifies the Court that he will not pursue an Article 78 proceeding.

### III. CONCLUSION

For the above reasons, defendants' motion to dismiss is denied without prejudice to renewal, and the action is stayed pending determination of the Article 78 proceeding or until Verbeek advises this Court that he does not intend to pursue an Article 78 proceeding. The Clerk of the Court is directed to administratively close the file in this matter.

SO ORDERED.