**Robert KELLY, Plaintiff,**

v.

**THE CITY OF MOUNT VERNON, Defendant.**

**No. 04 CIV. 4944(CM).**

United States District Court, S.D. New York.

Oct. 29, 2004.

Steven Thomas Sledzik, Jones, Sledzik, Garneau & Nardone, Scarsdale, NY, for plaintiffs.

Howard M. Miller, Terence M. O'Neil, Bond, Schoeneck & King, PLLC, Garden City, NY, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Robert Kelley brings this action against Defendant City of Mount Vernon. He alleges that (1) Defendant violated his rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983 by retaliating against him for speech he made in the workplace; (2) Defendant violated his

rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* and (3) Defendant violated the FLSA by retaliating against him for making claims thereunder. Plaintiff also asks the court to annul Defendant's decision to take away a stipend that Plaintiff had been receiving as part of his previously-held position as supervisor in the Detective Division, in accordance with Article 78 of the New York Civil Practice Law and Rules, § 7801, *et seq.* ("CPLR").

Defendant moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendant's motion is GRANTED.

### Facts

The relevant facts as pleaded by the Plaintiff Robert Kelly are that he was hired by Defendant The City of Mount Vernon on or about April 1, 1983.[1] Plaintiff was promoted and assigned to supervisor in the Detective Division in or about June of 1990, where he remained assigned for fourteen years. (Complaint ("Comp.") at ¶ 4.)

Plaintiff alleges that the following events transpired between May 2002 and November 2003:

(1) From May 1, 2002 to January 23, 2003, while serving as supervisor in the Detective Division, Plaintiff reported allegations of illegal gambling at a VFW Post to the Police Commissioner. On each occasion, Plaintiff was directed by the Police Commissioner to take no action on the matter. Following the last of these conversations with the Police Commissioner,

1. On a motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained in the complaint. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

Plaintiff memorialized his conversations in a written report to the Police Commissioner dated January 23, 2003. (Comp. at ¶ 5.)

(2) On or about August 5, 2003, Plaintiff directed the arrest of an individual later identified as the grandson of the Mayor of Mount Vernon. Prior to charging the Mayor's grandson with a weapons possession offense, investigating officer(s) had been directed by the Mayor to transport his grandson to police headquarters, while the Mayor made arrangements to have his grandson psychologically evaluated. The Plaintiff, however, directed detectives to interview the Mayor's grandson to obtain a statement from him. After making a taped confession, the Mayor's grandson was arrested at the direction of the Plaintiff. As a consequence of the taped interview, the Office of the District Attorney, Westchester County, contacted the Plaintiff and directed the Plaintiff to have the Mayor interviewed as part of the criminal investigation of the weapons possession offense. The Plaintiff notified the Chief of Police about the District Attorney's request, and the Chief of Police reported to the Plaintiff that he would personally follow up the request and interview the Mayor. A police report "endorsed by the Plaintiff" was prepared and submitted to the records unit regarding the Chief's interview of the Mayor. (Comp. at ¶ 6.)

(3) Plaintiff further alleges that since July 2001, when the Police Commissioner[2] was initially named Acting Police Commissioner, through June 2004, the date of the Complaint, the Commissioner has repeatedly asked Plaintiff and other staff members to "re-classify crimes" to lesser charges. The Police Commissioner directly and regularly asked Plaintiff to review crime reports for such re-classification. The Police Commissioner also spoke directly to subordinate supervisors of the Plaintiff, outside the ordinary chain of command, directing the subordinate officers to satisfy the re-classification of crime reports not otherwise endorsed by the Plaintiff. The Police Commissioner thereafter sent a patrol officer from the records unit to the Detective Division each day for the purpose of seeking the reclassification of crimes. Plaintiff refused to inaccurately re-classify crimes, and, on occasion, upgraded some crimes. (Comp. at ¶ 8.)

(4) On or about November 19, 2002, the Plaintiff directed an investigation into the illegal possession of handguns, where the suspect was the adult son of an active member of the Mount Vernon Police Department. The Police Commissioner personally directed the Plaintiff not to release any information related to the investigation and arrest of the police officer's son to the press, contrary to the daily practice of sharing such information with the media. Consequently, no information was released. On or about July 4, 2003, Plaintiff directed an investigation which resulted in the execution of a search warrant for the same residence, and the officer's son was again arrested again, this time for a narcotics offense. Plaintiff prepared a written press release relating to his investigation, which was thereafter approved by the Police Commissioner. The Plaintiff released the information to the press and spoke to reporter(s) regarding the matter. A family member of the police officer residing at that location subsequently called the Police Commissioner with a complaint, disturbed that the family's address was released to the press by Plaintiff. The Police Commissioner directed that an Internal Affairs investigation be commenced against the Plaintiff. The Plaintiff was

---

**2.** The Complaint does not to include the name of the Police Commissioner referenced therein, and he is not named as a defendant, as is customary in § 1983 cases.

exonerated of any wrongdoing after the investigation. (Comp. at ¶ 10.)

*Plaintiff is Reassigned*

On or about March 1, 2004, the Police Commissioner advised Plaintiff that he was being reassigned from Commanding Officer of the Detective Division to a subordinate position as Executive Officer of the Patrol Division. (Comp. at ¶ 11.) Plaintiff is presently employed as a Captain with the City of Mount Vernon Police Department, and remains assigned as the Executive Officer of the Patrol Division. (Comp. at ¶ 4.)

*Post–Reassignment "Speech"*

The Plaintiff also filed a series of reports in March of 2004, after he was reassigned.

(1) On or about March 19, 2004, Plaintiff filed a report with the commanding officer of the Patrol Division, recommending that all patrol squads be staffed with three supervisors to conform with accepted professional standards and best practices for the effective supervision of police. (Comp. at ¶ 17.)

(2) On March 25, 2004, Plaintiff filed a report identifying a dangerous condition of severe and significant weather damage to asphalt paving in the rear of police headquarters where City court judges and police department members parked their cars and the entrance way by which prisoners are transported in and out of police headquarters. Plaintiff forwarded this written report through the chain of command, identifying the potential liability should an accident and/or injury occur as a consequence of the dangerous condition. (Comp. at ¶ 18.)

(3) On or about March 31, 2004, Plaintiff filed a report regarding the absence of safety equipment in patrol vehicles and identified potential liabilities and hazards to the Police Department and its officers. (Comp. at ¶ 19.)

Also, by memorandum dated March 22, 2004, Plaintiff asked that he be compensated for 566 hours of compensatory time that he had accrued, as allegedly required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* This was the second time that Plaintiff had made such a request. (Comp. at ¶ 14.) In late 1996, Plaintiff and three other employees of the City Police Department, two Detective Sergeants and a Sergeant, filed a lawsuit against Defendant to recover overtime wages for time that they had served in their then current capacities. *Kelly v. City of Mt. Vernon*, No. 96–CV–9388 (CLB).[3] The matter was resolved in favor of Defendant. (Comp. at ¶ 12.)

*Allegedly Retaliatory Acts Taken After the Request for Overtime Compensation*

Subsequent to plaintiff's requesting overtime wages, he allegedly was subjected to a number of retaliatory actions.

On or about March 31, 2004, Plaintiff was ordered to work steady night tours, from 3:00 p.m to 11:00 p.m., as a duty captain. Defendant attached no fixed duties to Plaintiff's assignment as the duty captain for the 3:00 p.m. to 11:00 p.m. tour. Plaintiff's assignment to this position does not fall within the purview of his Executive Officer duties delineated in the Department Manual. No other administrator works this tour, and no other officer in the entire department works exclusive involuntary night tours of duty. (Comp. at ¶ 20.)

---

**3.** The district court issued a written Memorandum and Order granting Defendant's motion for summary judgement and dismissing Plaintiff's complaint in its entirety. This decision was thereafter affirmed by the Second Circuit. *Kelly v. City of Mount Vernon*, 162 F.3d 765 (2d Cir.1998).

On or about April 1, 2004, Defendant, without any hearing or notice to Plaintiff, stopped paying Plaintiff his Detective stipend as part of his salary and hourly compensation. Defendant had allowed all previous detective supervisors who were involuntarily transferred out of the Division to keep their stipends.[4] (Comp. at ¶ 21.)

On or about April 7, 2004, Plaintiff was excluded from a staff meeting related to the City Police Department's Honor Board; on May 10, 2004, Plaintiff was excluded from interviews of prospective police candidates conducted by the staff; on May 11, 2004, from participation in the Police Memorial Day, a annual event held in remembrance of deceased members of the service. He was also not designated as a recipient of May 21 and June 6 memoranda inviting all captains to a staff meeting that was customarily attended by captains and chiefs. Plaintiff had always participated in these events prior to his reassignment, and his predecessor as the Executive Officer of the Patrol Division was always invited to participate in these events. (Comp. at ¶ 22.)

On an unspecified date after his reassignment, Plaintiff submitted a requisition request for equipment needed by patrol officers to the Chief of Police. The requisition request was returned because the request had to be by the Patrol Division Commanding Officer. Plaintiff's approval was no longer sufficient. (Comp. at ¶ 23.)

On a daily basis, the commanding officer of the Patrol Division communicates with the Police Commissioner and/or the Chief of Police regarding the daily operations of the division. However, during the week of

May 24, 2004, while Plaintiff was serving in the commanding officer's absence, he had no such communications with the Police Commissioner or Chief of Police. Instead, the Police Commissioner remained in almost daily contact with the previously assigned Executive Officer of the Patrol Division. During the Plaintiff's tenure as the Patrol Division Executive Officer, he has had no communications with the Police Commissioner. (Comp. at ¶ 24.)

Plaintiff claims that Defendant's actions have caused him serious emotional distress, including sleeplessness, anxiety, and humiliation, including a loss of reputation and status in the community. Plaintiff also claims to have suffered economic loss as a result of Defendant's actions, including lost wages and benefits. (Comp. at ¶ 21.)

## CONCLUSIONS OF LAW

### Standards: 12(b)(6) Motion to Dismiss

When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations in the complaint as true. *See Desiano v. Warner–Lambert Co.*, 326 F.3d 339, 347 (2d Cir.2003). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). *See also Gmurzynska*

---

4. According to plaintiff, if he was successful in obtaining compensation for his compensatory time, the unilateral action of the Defendant in depriving him of the stipend would have negatively impacted his total compensation recovery, as the compensation rate is determined by the hourly rate that the employee earns when the funds are actually realized.

*v. Hutton,* 355 F.3d 206, 210 (2d Cir.2004) ("A complaint 'should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Thus, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Desiano,* 326 F.3d at 347 (quotation marks and citation omitted). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. *Zito v. Leasecomm Corp.,* 02 Civ. 8074, 2004 WL 2211650, **5–6, 2004 U.S. Dist. LEXIS 19778, *16–17 (S.D.N.Y. Sept. 30, 2004) (citing *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).

**Plaintiff's First Amendment Retaliation Claim Is Dismissed**

Plaintiff's first claim arises under 42 U.S.C. § 1983. It alleges that Defendant violated his First and Fourteenth Amendment rights by retaliating against him for speaking out against various issues within the police department. Defendant moves to dismiss this claim, arguing that Plaintiff's various communications, as identified in the Complaint, are not the constitutionally protected "speech" of a citizen addressing a matter of public concern, and therefore are not subject to First Amendment protection. As a threshold inquiry, I must determine whether Plaintiff's speech was constitutionally protected. Because I find that it was not, Plaintiff's § 1983 claim is without merit and must be dismissed.

■ It is well settled that, "A State cannot condition public employment on a basis that infringes on the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461

U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Accordingly, the Supreme Court has repeatedly held that public employers may not retaliate against their employees for exercising rights to free speech when they speak as citizens about matters of public concern. *See, e.g., Connick v. Myers,* 461 U.S. at 146–47, 103 S.Ct. 1684; *Mount Healthy School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The first step in deciding whether speech by a public employee is constitutionally protected is a determining whether the plaintiff is speaking "as a citizen upon matters of public concern." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Not all workplace speech by government employees involves matters of public concern. *Id.,* 461 U.S. at 149, 103 S.Ct. 1684. Speech will be fairly characterized as a matter of public concern if it relates to any matter of political, social, or other concern to the community. *See id.* However, speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, will not support a First Amendment retaliation claim. *See Cahill v. O'Donnell,* 75 F.Supp.2d 264, 272 (S.D.N.Y.1999) (citing *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993)).

■ The question of whether an "employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–49, 103 S.Ct. 1684 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually

every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). This determination is made as a matter of law by the Court.

"When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147, 103 S.Ct. 1684. "The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149, 103 S.Ct. 1684. "Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp.*, 991 F.2d at 1059; *see also Cahill*, 75 F.Supp.2d at 272–73.

The investigations, reports and statements made by Plaintiff that are the subject of this lawsuit occurred in the ordinary course of Plaintiff's work as an Officer and Captain in the Mount Vernon City Police Department. While this fact does not preclude a determination that his speech implicated matters of social or public significance, the fact that the speech arose during the usual performance of his duties weighs strongly against a characterization of the speech as relating to a matter of public concern. *See Cahill*, 75 F.Supp.2d at 273 (*citing Rao v. NYC Health & Hospitals Corp.*, 905 F.Supp. 1236, 1242 (S.D.N.Y.1995)).

I conclude that none of the speech that allegedly motivated plaintiff's reassign-ment qualifies as constitutionally protected speech.

█ The first example cited in the Complaint is the report he wrote memorializing his discussions with the Police Commissioner regarding gambling at the VFW Post. The report was an internal report to the Commissioner. The report detailed what actions had been taken, and made a record of the fact that he had brought these issues to the attention of the Commissioner. It is, in the common parlance, a "CYA" memo. It is not addressed to the Commissioner's supervisor, so no effort was being made to bring a pervasive or systematic cover-up in the police department to the attention of the relevant authorities or to the public. It was, therefore, purely private speech. *See e.g., Mishk v. Destefano*, 5 F.Supp.2d 194, 201–202 (S.D.N.Y.1998); *Cahill*, 75 F.Supp.2d at 273.

█ The second writing cited in the Complaint is the police report that was endorsed by him regarding an interview of the Mayor about a crime involving his grandson. The Complaint gives no indication that this report is anything other than the type of report that is regularly filed as part of Plaintiff's job. "A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern." *Rao*, 905 F.Supp. at 1243 (S.D.N.Y.1995); *see also Cahill*, 75 F.Supp.2d at 272–73. Plaintiffs' work in the police department is undoubtedly important, and the investigations of the department are, in a general way, a matter of public concern. However, the write-up of an interview with a criminal suspect is part of Plaintiff's day-to-day professional obligations and is not fairly distinguishable from any other ordinary police responsibil-

ities. This is true regardless of who the suspect's grandfather might be.

If Plaintiff had contacted someone and revealed that the Mayor tried to intervene in the handling of his grandson's case, his speech would have been protected. But the speech in question does not fit that description. It is a suspect's statement. It is routine for a detective to take such a statements, and for a supervisor to sign off on same. The identity of the suspect does not turn the suspect's statement, as transcribed by the plaintiff, into plaintiff's speech on a matter of public concern.

■ Third, Plaintiff discusses his refusal to re-classify crimes as per the Police Commissioner's request. The classification of crimes was part of Plaintiff's duties as a police officer. Again, had Plaintiff complained to higher-ups, formally or informally, regarding what he saw as unethical conduct on the part of the Commissioner, his speech would have been protected. However, the Complaint alleges only that Plaintiff refused to follow the orders of the Commissioner and, on occasion, did the opposite of what he was requested to do. (Comp.¶ 8.) Although Plaintiff's refusal to cooperate may have been inspired by an issue of legitimate public concern, he failed to voice this opposition in any cognizable way that could come within the ambit of protected speech. *See Hankard, et al., v. Town of Avon, et al.,* 126 F.3d 418, 423 (2d Cir.1997) (rejecting plaintiffs' claim that their refusal to revise a report as per police chief's instructions constituted protected speech); *see also Buazard v. Meridith,* 172 F.3d 546, 549 (8th Cir.1999) (holding that refusal by police officer to make changes—which officer believed to be false—to a witnesses statement as ordered by the Chief of Police, did not amount to speech on a matter of public concern).

■ The fourth instance of pre-reassignment speech listed in the complaint is the July 2003 press release about the arrest of an officer's son. According to Plaintiff, this press statement was made "Pursuant to department policy" and as part of the, "Daily practice of sharing such information with the media." (Plaintiff's Memorandum of Law at 3; Comp. at ¶ 5.) Furthermore, the statement Plaintiff released to the press was approved by the Commissioner. This statement was presented on behalf of the department and was made in the ordinary course of Plaintiff's employment duties. It is the departmental statement about a pending case. It is not plaintiff's own constitutionally protected speech.

■ The Complaint also alludes to three reports Plaintiff wrote in March of 2004, but they were made after plaintiff was reassigned from Commanding Officer of the Detective Division to Executive Officer of the Patrol Division. By definition, Plaintiff's reassignment, which took place on March 1, 2004, could not have been made in retaliation for the speech reflected in those statements.

■ Finally, none of the reports filed by plaintiff in March 2004—immediately prior to the various retaliatory actions that were allegedly taken against him in April, May and June—is speech on a matter of public concern, as opposed to speech on a purely employment matter. All three post-reassignment reports discussed in the Complaint—the March 19, 2004 report regarding supervisory staffing, the March 25, 2004 report regarding dangerous conditions near building entrance, and the March 31, 2004 report regarding absence of safety equipment in patrol cars—were made in the context of his position as the Executive Officer of the Patrol Division. Each discusses internal issues and does so through an internal reporting system.

Plaintiff was acting as an employee of the Mount Vernon City Police Department when he made these reports. The form of his speech (routine official reports), the content of the speech (addressing issues affecting patrol units), and the context (pursuant to duties of the job), all indicate that Plaintiff was not speaking "as a citizen" on a matter of public concern, but as an Executive Officer carrying out the duties of his employment. *See Gonzalez v. City of Chicago,* 239 F.3d 939, 941 (7th Cir.2001).

I do not mean to minimize the seriousness of plaintiff's allegations. Some of what he intimates in his complaint suggests serious misconduct on the part of his supervisor. But the fact that plaintiff was mistreated (assuming it to be true) does not automatically give him a federal claim. Only acts that, fairly pled, implicate retaliation for public concern speech belong in this Court. Since none of the speech cited in Plaintiff's complaint qualifies as protected speech for purposes of a § 1983 First Amendment retaliation claim, the first count is dismissed. If plaintiff has viable claims against the City of Mt. Vernon or the Police Commissioner under State law, he should go to the New York State Supreme Court to vindicate them, rather than try to bootstrap them into this court on the back of the First Amendment. .

**Plaintiff's FLSA and FLSA Retaliation Claims Are Dismissed**

██ Plaintiff also alleges that Defendant violated the FLSA by refusing to pay him overtime wages to which he was entitled during the period 1983–1990, before he became a supervisor in the Detective Division (Second Cause of Action), and that Defendant retaliated against Plaintiff for requesting such compensation in March 2004 (Fourth Cause of Action). Both of these claims are without merit.

According to Plaintiff's Memorandum of Law, the accrued overtime wages to which plaintiff claimed entitlement in his March 22, 2004 memorandum to the Commanding Officer of the Patrol Division covers only the period of time prior to Plaintiff's promotion to detective—specifically from 1983–1990. *See* Plaintiff's Memorandum of Law at 14 ("The compensatory time at issue in this action includes time accrued prior to Kelly's promotion [to supervisor of the Detective Division].").[5] The statute of limitation for an FLSA claim for overtime compensation is two years, unless the claim arises out of a willful violation of law, in which case the statute of limitations is three years. 29 U.S.C. § 255. Plaintiff allegedly accrued this overtime between fourteen and twenty-one years ago. Plaintiff's claim for non-payment of overtime wages from 1983–1990 is thus time-barred—indeed, is patently frivolous—and must be dismissed.

██ Turning to Plaintiff's retaliation claim under the FLSA: Plaintiff's request that he be compensated under the FLSA for overtime between 1983–1990 was made in a March 22, 2004 internal memorandum addressed to the Commanding Officer of the Patrol Division. But "the FLSA's retaliation provision, 29 U.S.C. § 215(a)(3), 'limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor.'" *Aneja v. Triborough Bridge & Tunnel Auth.,* 35 Fed. Appx. 19, 22 (2d Cir.2002) (quoting *Lambert v. Genesee Hosp.,* 10 F.3d 46, 55 (2d Cir.1993)). Plaintiff never filed a formal complaint for violations of the FLSA; nei-

---

**5.** Plaintiff concedes that, "The 1998 decision holds that, as a detective, Kelly is an exempt employee [from the FLSA]." Plaintiff's Memorandum of Law at 14 (referring to *Kelly v. City of Mount Vernon,* 162 F.3d 765 (2d Cir. 1998)).

ther did he attempt to institute a formal proceeding to recover this back overtime until he filed the instant lawsuit (which was after all the retaliatory acts alleged at ¶¶ 20 to 24 of the complaint were committed). Therefore, he cannot recover for FLSA retaliation. In any event, I am hard-pressed to see that Plaintiff was doing anything other than attempting to manufacture a retaliation claim by asserting a facially-time barred claim for overtime wages. Such behavior should not be rewarded.

### Plaintiff's Article 78 Claim Is Dismissed

■ Plaintiff alleges that Defendant's decision to take away his Detective stipend one month after he was reassigned from Commanding Officer of the Detective Division to Executive Officer of the Patrol Division, was "not based upon substantial evidence, is clearly erroneous, contrary to law, arbitrary, capricious, improper and an abuse of discretion." He therefore requests that the decision be "annulled in accordance with Article 78, New York Civil Practice Law and Rules, § 7801, *et seq.*"

An Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in this Court in a number of ways. It is a "special proceeding ... designed to facilitate a summary disposition of the issues presented, ... and has been described as a fast and cheap way to implement a right that is as plenary as an action, culminating in a judgment, but is brought on with the ease, speed and inexpensiveness of a mere motion."

*Lucchese v. Carboni,* 22 F.Supp.2d 256, 258 (S.D.N.Y.1998) (quoting *Davidson v. Capuano,* 792 F.2d 275, 280 (2d Cir.1986)

(internal citation and quotation marks omitted)).

This court has no original jurisdiction over an Article 78 claim. I could consider the claim if it were pendent to a viable federal claim, but all of Plaintiff's federal claims have been dismissed. District courts may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c).

Cases uniformly hold that federal courts should not hear Article 78 claims when all federal claims have been dismissed. *See, e.g., Cartagena v. City of New York,* 257 F.Supp.2d 708, 709–711 (S.D.N.Y.2003) (concluding that federal courts "do not have the discretion to exercise supplemental jurisdiction over an Article 78 claim"); *Birmingham v. Ogden,* 70 F.Supp.2d 353, 372 (S.D.N.Y.1999) ("federal courts are loath to exercise jurisdiction over Article 78 claims"); *Camacho v. Brandon,* 56 F.Supp.2d 370, 380 (S.D.N.Y.1999) ("we see no reason to exercise [the court's] discretion [to exercise supplemental jurisdiction] by adjudicating a purely state procedural remedy"); *Lucchese v. Carboni,* 22 F.Supp.2d 256, 258 (S.D.N.Y.1998) ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there."); *Herrmann v. Brooklyn Law School,* 432 F.Supp. 236, 240 (E.D.N.Y.1976) ("This special proceeding designed to accommodate to the state court system is best suited to that system.").[6] New York courts have held that, "the Supreme Court has exclusive jurisdiction over Article 78 proceedings," with the exception of the Article 78 proceedings that must be brought in the Appellate

---

**6.** As far as I know, there is only one federal court has ever exercised supplemental jurisdiction over an Article 78 claim, and it was a highly unusual one. In *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988), the Second Circuit affirmed the exercise by Judge Sand of jurisdiction over an Article 78 proceeding where Judge Sand exercised his authority under the All Writs Act to ensure that the state court proceeding would not interfere with the consent decree that had been entered in his case.

Division. *Vanderbilt Museum v. American Assoc. of Museums*, 113 Misc.2d 502, 449 N.Y.S.2d 399, 403 (N.Y.Sup. Suffolk Co.1982) (emphasis added); N.Y. C.P.L.R. 7804 (McKinney 1994) (Practice Commentary 7804:2) ("The Supreme Court has exclusive subject matter jurisdiction over most Article 78 proceedings ... Certain Article 78 proceedings, however, must be commenced in the Appellate Division."). For the reasons stated in *Birmingham v. Ogden,* I decline to exercise jurisdiction over Plaintiff's Article 78 claims.

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

This constitutes the decision and order of the Court.